**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mark William Paul STAUFER,**
**Defendant–Appellant.**

No. 93–50173.

United States Court of Appeals,
Ninth Circuit.

Submitted June 6, 1994 *.

Decided Oct. 26, 1994.

* The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Peter M. Furguson, Santa Barbara, CA, for defendant-appellant.

Mary C. Andreus, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: D.W. NELSON, BEEZER and KOZINSKI, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by Judge BEEZER.

D.W. NELSON, Circuit Judge:

### OVERVIEW

Mark William Paul Staufer was convicted after a jury trial on a one count indictment, charging him with possession with intent to distribute "LSD" (lysergic diethamide acid). He raises a variety of claims on appeal, challenging both his conviction and his sentence. We conclude that his challenges to his conviction are without merit. Based on the district court's factual findings, however, we are persuaded that he is entitled to a downward departure on the basis of sentencing entrapment. Accordingly, we vacate his sentence and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1992, Mark Staufer was introduced to Agent Michael Daul, a Drug Enforcement Administration ("DEA") agent acting in an undercover capacity and posing as someone interested in purchasing LSD. The meeting was initiated and arranged by a person named Scott, who Staufer had known as an acquaintance for approximately two

years. Staufer did not know, however, that Scott had been convicted and sentenced to federal prison for more than ten years and was working for the government as a confidential informant ("CI"). The U.S. Attorney's office has the discretion to file a motion for a reduction in sentence for such an individual pursuant to Fed.R.Crim.Pro. 35 or U.S.S.G. § 5K1.1 if it determines that the CI's cooperation has assisted the government in the investigation or the prosecution of another person who has committed an offense.

During the time that Staufer had known him, Scott often had taken drugs in Staufer's presence. As a CI, Scott was free to contact Staufer as he pleased and received little or no supervision from the government. According to Staufer, the CI frequently contacted him, always encouraging him to sell drugs. Indeed, at one point during the setup, Staufer commented to Daul that the CI was telephoning him so frequently at his job that his supervisor was upset with him.

At the time of the sting operation, Staufer was experiencing serious financial difficulties. He had almost no money to his name, was living in a garage because he could not afford to pay rent, and had a number of outstanding bills that he was unable to pay. He recently had been robbed, beaten and hospitalized. Although Staufer had difficulty finding full time employment, making it difficult for him to maintain a permanent residence, he occasionally had been able to obtain part time employment.

It was against this background that Staufer finally was induced to meet undercover agent Daul on August 19, 1992. At the meeting, it was agreed that Staufer would procure 10,000 doses of LSD for Daul in exchange for $8,000. At trial, Staufer maintained that he had wanted to sell only 5,000 doses, but that the CI and Daul would not accept his offer, insisting instead that he provide 10,000 doses. There also is evidence that the CI and Daul immediately offered to pay more money than they initially had agreed to pay when Staufer expressed reluctance at the larger deal.

After a number of conversations, arrangements eventually were made for Staufer to deliver the 10,000 doses of LSD on September 16, 1992. When Staufer met with Daul on that date, and displayed to him the paper containing the LSD, he was arrested.

At trial, Staufer raised an entrapment defense. The jury rejected the defense and found Staufer guilty. Based on the weight of the drugs (0.5 grams) and the paper on which the LSD had been placed (129.4 grams), the district court set Staufer's offense level at 36. Based on Staufer's previously clean record and a two-point reduction for his acceptance of responsibility for the crime, the district court sentenced Staufer to 151 months in prison and five years of probation.

The district court, Judge Ideman presiding, found that prior to his involvement with the CI, Staufer had not engaged in any drug deals of a similar magnitude. Indeed, the only evidence that Staufer had ever sold drugs before his involvement with the CI was provided by Staufer himself during trial. Staufer testified at trial that on one occasion he had obtained 25 or 30 doses of LSD for $15. Although he had consumed most of the LSD himself, he had given some of it to friends who had given him $8 in return. The district court judge found that Staufer's testimony was credible.

In response to Staufer's statements to the court, in which Staufer expressed remorse for what he had done, but bewilderment at the severity of his punishment, the district court judge expressed his own dissatisfaction with the sentence he felt he was compelled to impose. He explained to Staufer that the court of appeals had just reversed him for giving a life sentence to a man who had killed his wife by throwing her off a ship where they were spending their honeymoon, and he expressed his disapproval of a system that compelled him "to give Mr. Staufer for the transaction more time in prison than [he was] authorized to give a man who murdered his wife on their honeymoon." The Judge further explained that, although he was required to impose such an onerous sentence, he would "be delighted if the court of appeal[s] would find that [he was] in error."

## DISCUSSION

### I. SENTENCING ENTRAPMENT

 At sentencing, Staufer maintained that the district court should have departed downward on the basis of sentencing entrapment. Sentencing entrapment or "sentence factor manipulation" occurs when "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Stuart,* 923 F.2d 607, 614 (9th Cir.), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991) (describing defendant's argument but refusing to find that sentencing entrapment had in fact occurred). According to Staufer, sentencing entrapment provides a valid legal basis for a downward departure under 18 U.S.C. § 3553(b), which allows the sentencing court to depart on the basis of a ground not adequately considered by the Sentencing Commission. Although the district court judge agreed that sentencing entrapment should be recognized as a proper ground for a downward departure, he declined to depart on that basis because he believed that he lacked the legal authority to do so.

 This court "review[s] *de novo* a district court's legal determination that the Guidelines prevent departure if the court indicates it would otherwise have departed." *United States v. Belden,* 957 F.2d 671, 676 (9th Cir.), *cert. denied,* ─── U.S. ───, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992).

The Ninth Circuit recently has recognized that government misconduct of an entrapping nature may warrant a downward departure. *See United States v. Garza–Juarez,* 992 F.2d 896, 912–13 (9th Cir.1993). However, as the district court judge correctly noted, the Ninth Circuit has not yet decided whether, under the Guidelines, sentencing entrapment may be relied on as a basis for a downward departure. *See, e.g., United*

*States v. Barnes,* 993 F.2d 680, 684 n. 2 (9th Cir.1993) (cert. *denied,* ─── U.S. ───, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994) (declining to reach the sentencing entrapment issue because defendant had failed to show he was not predisposed to buy the quantity of drugs involved); *see also United States v. Frazier,* 985 F.2d 1001, 1003 (9th Cir.1993) (same).[1]

Several other circuits have suggested that sentencing entrapment may warrant a downward departure. For example, in *United States v. Barth,* 990 F.2d 422 (8th Cir.1993), the Eighth Circuit reasoned in dicta that, although it was not present in that case, "sentencing entrapment may be legally relied upon to depart under the sentencing guidelines." *Id.* at 424. *See also, United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.) (indicating that it is possible that when "outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities" a sentence reduction may be appropriate), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991); *United States v. Connell,* 960 F.2d 191, 196 (1st Cir.1992) (leaving open the possibility that sentencing entrapment may be an appropriate basis for reducing a sentence). *But see United States v. Williams,* 954 F.2d 668, 673 (11th Cir.1992) (rejecting sentencing entrapment theory).

As the *Barth* court explained, "the sentencing guidelines are causing courts nationwide to rethink the long-established rule of entrapment." 990 F.2d at 424. Prior to the enactment of the Guidelines, the only discretion delegated to law enforcement agencies was over whom to investigate and prosecute, and courts could adequately prevent government abuse by ensuring that only defendants with a criminal predisposition were being targeted. By exercising their discretion in sentencing, moreover, courts were able to ensure that defendants' prison terms did not exceed their culpability. Now that our sen-

---

1. In *Barnes,* 993 F.2d at 684 n. 2, we briefly addressed a related issue. The *Barnes* court stated that, under U.S.S.G. § 2D1.4(a), basing the determination of the offense level on the "negotiated amount" in a reverse sting operation does not necessarily constitute sentencing entrapment. The *Barnes* court also noted that the defendant in that case had not shown any sign that he was not

predisposed to purchase the amount of drugs he had negotiated to buy with the DEA agents. *But cf.* Amend. Commentary to § 2D1.1, ¶ 486, (effective Nov. 1993) (stating that the district court may depart downward if the government engaged in sentencing entrapment in a reverse sting operation).

tencing scheme has moved from a discretionary process to a determinate system based on the weight of the drugs involved in a transaction, the entrapment doctrine designed for the previous system no longer adequately protects against government abuse nor ensures that defendants will be sentenced on the basis of the extent of their culpability. *See United States v. Calva,* 979 F.2d 119, 123 (8th Cir.1992) (recognizing that "the Sentencing Guidelines' mechanism of boosting sentences based on the cumulation of additional drug sales has the potential for abuse by police"); *see also United States v. Pacheco–Osuna,* 23 F.3d 269 at 272 (9th Cir. 1994) (recognizing that "misconduct of an entrapping nature" may warrant a downward departure in part because "entrapment, and issues like it, can cast light upon a defendant's culpability"). Under the present sentencing scheme, government abuse can be discouraged and corrected only if courts also are able to ensure that the government has some reason to believe that defendants are predisposed to engage in a drug deal of the *magnitude* for which they are prosecuted. Furthermore, courts can ensure that the sentences imposed reflect the defendants' degree of culpability only if they are able to reduce the sentences of defendants who are not predisposed to engage in deals as large as those induced by the government.

In November 1993, the Sentencing Commission amended the Guidelines specifically to provide that:

> "[i]f in a reverse sting [operation], ... the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

Amend. Application Note to § 2D1.1, ¶ 486. As this Amendment illustrates, the Sentencing Commission now expressly recognizes that law enforcement agents should not be allowed to structure sting operations in such a way as to maximize the sentences imposed on defendants, and that courts may take into consideration the predisposition and capacity of the defendant to engage in a deal of the magnitude for which he or she was convicted.

The Sentencing Commission's determination that the defendant may receive a downward departure when the government artificially lowers the price of the drugs, however, only addresses one of the ways in which drug enforcement agents are able to manipulate sentences. As the instant case shows, there are other ways in which similar abuses of government powers can go unchecked under the Guidelines. The significance of the Amendment is that it shows that the Sentencing Commission is aware of the unfairness and arbitrariness of allowing drug enforcement agents to put unwarranted pressure on a defendant in order to increase his or her sentence without regard for his predisposition, his capacity to commit the crime on his own, and the extent of his culpability. Our conclusion that a finding of sentencing entrapment is warranted in the instant case is motivated by the same concerns, and, as such, is fully consistent both with the Amendment and with the sentencing factors prescribed by Congress. *Pacheco–Osuna,* 23 F.3d at 271 (stating that a court may depart downward on the basis of circumstances not taken into consideration by the sentencing commission only so long as "the circumstance upon which it seeks to base its departure 'is consistent with the sentencing factors prescribed by Congress'") (internal citation omitted).

As Judge Ideman pointed out,

> the present situation permits not only ... the prosecutor to decide what the sentence will be by the charges that are filed and the way the case is pursued, but actually the sentencing discretion is delegated all the way down to the individual drug agent operating in the field.

> Drug agents can decide, apparently without any supervision by anybody to negotiate with somebody for an ounce, a pound, a kilo, 100 kilos, a million kilos of a substance and, of course, if the defendant bites at the bait, then that amount chosen

by the drug agent will determine his drug sentence.

In this case, Judge Ideman found that Staufer was a user and sometime seller of LSD, but that he sold only to personal friends and had never engaged in a deal even approaching the magnitude of the transaction for which he was convicted. The court recognized that although Staufer might have been predisposed to supply drugs "only on a very small level for his friends," he was not predisposed "to involve himself in what turned out to be, from the standpoint of the Sentencing Guidelines, an immense amount of drugs."

■ We are persuaded that "sentencing entrapment may be legally relied upon to depart under the Sentencing Guidelines," *United States v. Barth,* 990 F.2d at 424, and, based on the district court's findings, we conclude that Staufer was so entrapped in this case. Accordingly, we reverse Staufer's sentence and remand the case to the district court for resentencing.[2]

## II. STAUFER'S OTHER DOWNWARD DEPARTURE CLAIMS

■ Staufer maintains that the district court erred in denying his requests for downward departures on the grounds of duress, cruel and unusual punishment, and aberrant behavior. The record makes clear that the district judge carefully considered each of these grounds, and exercised his discretionary authority not to depart.[3] Accordingly, this court lacks jurisdiction to review these claims. *United States v. Morales,* 898 F.2d 99, 101–103 (9th Cir.1990).

## III. THE ENTRAPMENT DEFENSE

■ The district court instructed the jury on an entrapment defense, which the

jury rejected. Staufer contends that, notwithstanding the jury's guilty verdict, we should reverse his conviction on the ground that he was entrapped as a matter of law. There are two elements to the entrapment defense: (1) "the defendant was induced to commit the crime by a government agent," and (2) prior to the initial contact by the government agents, the defendant "was not otherwise predisposed to commit the crime." *United States v. Hoyt,* 879 F.2d 505, 509, *amended on other grounds,* 888 F.2d 1257 (9th Cir.1989); *see also Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992). "The 'principal element of entrapment [is] the defendant's predisposition to commit the crime.'" *Hoyt,* 879 F.2d at 509 (citing *United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)). To justify acquittal as a matter of law, Staufer would have to show "*undisputed evidence* making it patently clear that an otherwise innocent person was induced to commit the illegal act." *United States v. Mkhsian,* 5 F.3d 1306, 1309 (9th Cir.1993) (quotation omitted).

Staufer admitted at trial that in the past he had sold small quantities of LSD. Although we conclude that Staufer was not predisposed to engage in deal of the magnitude for which he was convicted, we conclude that he failed to carry his burden of making it "patently clear" that he lacked the predisposition to engage in an illegal act, and that the jury reasonably could have found against him on his entrapment defense.

## IV. THE ENTRAPMENT INSTRUCTION

■ Staufer contends that the entrapment instruction misstated the law as set forth in

**2.** We do not reach the merits of Staufer's claim that, in light of the 1993 Amendment to § 2D1.1, ¶ 488, which changed the method of calculating the weight of LSD for purposes of sentencing, his sentence should be reduced. Under U.S.S.G. § 1B1.10, Staufer must petition the district court for modification of his sentence. We note, however, that if Staufer petitions the district court for modification of his sentence in light of the Amendment, the district court will have the discretion to apply the Amendment retroactively, *see* U.S.S.G. § 1B1.10(a). We express no view as to the effect of the Amendment on the calculation of

the mandatory minimums in light of the Supreme Court's decision in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

**3.** The district court judge explained "somewhat regretfully" that "although there were elements—elements of what we think of as coercion and duress here, [he could not conclude] that [the imperfect entrapment exception under 5K2.2 could] be squeezed into this situation."

*Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1543, 118 L.Ed.2d 174 (1992). However, defendant proposed the instruction to which he now objects, even modifying the pattern instruction to conform to the *Jacobson* opinion. ER 112–13, 164–66. 'When the defendant himself proposes the jury instruction he later attacks on appeal, review is denied under the "invited error" doctrine.' *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991).[4]

## V. DISCLOSURE OF THE COOPERATING INDIVIDUAL'S IDENTITY

■■ The denial of a motion to compel the disclosure of a cooperating individual or a confidential informant is reviewed for abuse of discretion. *United States v. Williams,* 898 F.2d 1400, 1402 (9th Cir.1990); *United States v. Gonzalo Beltran,* 915 F.2d 487, 488 (9th Cir.1990).

■■ Under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the district court should have required the government to disclose the identity of the CI if the information was relevant and helpful to the defense or "essential to a fair determination of a cause" and, further, if on balance the public interest in keeping the identity of the informant confidential is outweighed by the benefit to the defendant. *Id.* at 60–63, 77 S.Ct. at 627–29. Staufer had the burden of proving that disclosure was required in this case. *Williams,* 898 F.2d at 1402 (citing cases).

■■ Staufer argues that he was entitled to disclosure of the CI's identity to prove entrapment. Because the record shows that the government met its burden of proving that Staufer was predisposed to commit the crime, Staufer failed to prove that disclosure was required.[5] Accordingly, the district court did not abuse its discretion in denying the request for disclosure.

## CONCLUSION

We reject Staufer's challenges to his conviction. We vacate Staufer's sentence, however, and remand this case to the district court for resentencing.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

BEEZER, Circuit Judge, dissenting in part:

The court's opinion recognizes that the jury determined that Staufer was guilty of possession with intent to distribute lysergic diethamide acid and that Staufer did not prove facts sufficient to sustain an entrapment defense. I concur in parts II through V of the court's opinion which accepts the jury verdict and affirms the conviction.

I dissent from part I which vacates Staufer's sentence and holds that Staufer is entitled to a downward departure on the basis of "sentencing entrapment."

Because the government had nothing to do with the supply side of this drug transaction, Staufer alone is responsible for the drugs he was prepared to deliver. Although I agree that "sentencing entrapment" theoretically provides a legal basis for downward departure, I believe that the nature of this ground is properly defined by United States Sentencing Guidelines § 2D1.1, comment. n. 17. The note permits downward departure only in reverse sting operations. Even then, the sentencing court must find that the government agent "set a price for the controlled substance that was substantially below the market value of the controlled substance...." The district court properly re-

---

4. According to Staufer, even though the instruction was not objected to at trial, under this court's holding in *Mkhsian,* 5 F.3d at 1311, he is not barred from raising this issue on appeal. Staufer's reliance on *Mkhsian,* however, is misplaced. In *Mkhsian,* the court held that the defendant was not precluded from raising the issue on appeal because the Supreme Court had not decided *Jacobson* when the defendant drafted the erroneous entrapment instructions. *Id.* Here, *Jacobson* was already on the books and

Staufer's trial attorney specifically modified the entrapment instruction by adding the last paragraph to conform to the Supreme court's holding in *Jacobson.* Thus, we deem this issue waived and decline to review it on appeal.

5. Contrary to the government's contention, however, the record shows that Staufer renewed his motion to disclose the informant's identity and thus preserved this issue for appeal.

jected Staufer's "sentencing entrapment" argument.

The statute, 18 USC § 3553(b), provides that the court shall impose a sentence within the appropriate guideline range unless it finds that there "exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." Contrary to the conclusion urged in the court's opinion, the Commission took into account the possibility of "sentencing entrapment" but limited this ground for departure to a particular set of circumstances, namely to reverse stings in which the government acts as the seller rather than the purchaser of a controlled substance. Our precedents acknowledge this fact. *See United States v. Barnes,* 993 F.2d 680, 684 n. 2. (9th Cir.1993); *United States v. Frazier,* 985 F.2d 1001, 1003 (9th Cir.1993).

There is a facially appealing symmetry between reverse and "straight" stings. I do not believe, however, that this symmetry warrants our expanding the scope of the "sentencing entrapment" ground beyond the circumstances described in note 17. In any event, this facial symmetry loses its appeal when the relevant policy considerations are taken into account.

First, the negotiated drug purchase is a lawful investigative methodology. To be successful, the negotiations leading to the purchase must credibly reflect marketplace custom. A certain degree of firmness in price and quantity is likely to be expected by all parties involved. Any seller of drugs would likely become wary of a particularly undemanding buyer. As such, our expansion of the "sentencing entrapment" ground for departure may considerably weaken the efficacy of drug investigations.

Regardless of our personal feelings about the efficacy of the current "drug war," its purpose is to reduce the supply of drugs in the marketplace. In the reverse sting, the government behaves in a manner that is contrary to this policy in order to maximize a particular defendant's sentence. Significantly, offering drugs for sale at a below market price can be viewed as preying on the weakness of a presumably addicted buyer. This may warrant departure. In a "straight" sting, the government has no real control over the ultimate amount produced. Although the government may urge that the defendant meet its demand, it does so under circumstances where the increased supply will serve only as evidence of guilt. The defendant determines the quantity of drugs entering the marketplace. Unlike the presumably addicted buyer, moreover, the defendant must be presumed to be a rational merchant who factors the cost of being apprehended into the price of the product.

Finally, even if "straight" stings provide a lawful basis for departure, I do not believe that the facts in this case warrant departure. I base this belief on the language of note 17, which requires a finding that the government "set a price for the controlled substance that was substantially below the market value of the controlled substance...." Although the record indicates that the confidential informant increased the negotiated price after Staufer expressed apprehension about meeting the government's demand, there was no express finding that the transaction price was set substantially *above* the market price, contrary to the requirements of note 17.

I would affirm Staufer's conviction and sentence.