**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary William MINORE, aka Skip,**
**Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Arthur Torsone, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Prommateta Chinawat, Defendant–**
**Appellant.**

No. 99–30381, 00–30025, 00–30052.
D.C. No. CR–98–00355–TSZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2000.

Decided June 17, 2002.

Before FLETCHER, B., and FISHER, Circuit Judges, and SCHWARZER,* Senior District Judge.

### MEMORANDUM **

Gary W. Minore and Arthur Torsone appeal their sentences imposed following their guilty pleas to various drug and money laundering crimes. Prommateta Chinawat appeals his conviction after jury trial and sentence. By a separately filed opinion, we have addressed the claims of Minore and Chinawat arising under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct.

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

2348, 147 L.Ed.2d 435 (2000). We address defendants' remaining claims in this memorandum disposition. Because the parties are familiar with the facts, we discuss only the issues raised in their briefs.

*United States v. Minore*

### I. SENTENCING ENTRAPMENT

Minore contends that the district court erred in denying him a downward departure on the basis of sentencing entrapment, arguing that because the credit extension offered by law enforcement for the third "reverse sting" load enabled him to purchase a larger quantity of marijuana than he could otherwise afford, his base offense level was inappropriately increased from 32 to 36 and he was over-sentenced by 67 months.

The Sentencing Guidelines recognize sentencing entrapment as a basis for departure. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1, App. n. 15 (1998) (downward departure may be warranted where price manipulation by government in reverse sting operation allows defendant to purchase significantly greater quantity than his resources would allow at market rates). Application Note 12 to Section 2D1.1, which addresses the situation presented here, states that if a defendant establishes that he "was not reasonably capable of providing[ ] the agreed-upon quantity …, the court shall exclude from the offense level determination the amount … that the defendant establishes that he … was not reasonably capable of providing." [1]   U.S.   SENTENCING

---

1. In fact, there are two remedies for sentencing entrapment: A court may decline to apply the statutory penalty provision for the greater offense the defendant was induced to commit, or it may instead exercise its discretion to depart downward from the sentencing range for the greater offense. *United States v. Parrilla*, 114 F.3d 124, 127 (9th Cir.1997). Be-

GUIDELINES MANUAL § 2D1.1, App. n. 12 (1998). The defendant bears the burden of proving entrapment by a preponderance of the evidence. *See Parrilla,* 114 F.3d at 127. In determining whether a defendant has established sentencing entrapment, the court looks to the defendant's "predisposition and capacity ... to engage in a deal of the magnitude for which he or she was convicted." *United States v. Staufer,* 38 F.3d 1103, 1107 (9th Cir.1994); *see also United States v. Naranjo,* 52 F.3d 245, 250 (9th Cir.1995) (noting that defendant must demonstrate he had "neither the intent nor the resources" for the transaction). We review the district court's application of the Sentencing Guidelines for abuse of discretion and its factual findings for clear error. *Parrilla,* 114 F.3d at 126.

■ Minore concedes his predisposition, but challenges his financial capacity to purchase the third load. He offers no evidence, however, to show that he was not reasonably capable of buying the third load if not for the government's favorable terms. Unlike the defendant in *Staufer,* who was living in a garage because he could not afford to pay rent or outstanding bills, *Staufer,* 38 F.3d at 1105, Minore offers no evidence of financial difficulties. In fact, he was arrested with approximately $24,000 on his person after having delivered the $25,000 down payment. He points to a co-defendant's statement during price negotiations with the government informant about the conspirators' earlier "expenditures" and that they were "tapped out," but these comments could easily have been just a tactic to secure a better deal. Furthermore, the fact that the third load's terms were the most favorable, requiring less up front, does not establish that Mi-

nore lacked the means to engage in the transaction. The district court's finding that Minore failed to meet his burden was not clearly erroneous.

## II. INEFFECTIVE ASSISTANCE

Relying on *United States v. Daas,* 198 F.3d 1167, 1180–81 (9th Cir.1999), Minore also argues that trial counsel was ineffective for failing to ask for a downward departure based on sentencing disparity. Ineffective assistance of counsel claims are ordinarily raised in collateral habeas proceedings, *see United States v. Quintero-Barraza,* 78 F.3d 1344, 1347 (9th Cir.1995), and neither of the two recognized exceptions to this general rule applies here. Nothing in the existing record shows that similarly situated defendants received more favorable treatment or that counsel's representation was so inadequate that it obviously denied Minore his Sixth Amendment right to counsel. *See United States v. Reyes–Platero,* 224 F.3d 1112, 1116 (9th Cir.2000), *cert. denied,* 531 U.S. 1117, 121 S.Ct. 868, 148 L.Ed.2d 780 (2001) (citations omitted). Accordingly, we will not consider Minore's ineffective assistance claim on direct appeal.

### United States v. Torsone

Torsone seeks to have his plea agreement reformed so as to require the government to move for a sentence below the mandatory minimum pursuant to 18 U.S.C. § 3553(e). He argues that after he gave the government full and complete cooperation, including information incriminating himself and other persons, the government tendered a plea agreement specifically precluding a § 3553(e) motion. Torsone does not squarely contend that the government ever agreed otherwise but argues, rather,

cause Minore stipulated to the drug quantity in his plea agreement, a downward departure

was the only available remedy.

that after having provided the government with all of the damaging information, he had no choice but to accept the agreement. He argues that this rendered his plea involuntary.

■ We reject the argument for several reasons. At the plea hearing, the court explained to Torsone that the agreement allowed the government to move for a departure under Guideline Section 5K1.1, U.S. SENTENCING GUIDELINE MANUAL § 5K1.1 (1998), but that he would still be subject to the mandatory minimum. Torsone indicated that he understood. Moreover, the court explained that under the agreement Torsone waived the right to appeal any sentence within or below the Guideline range (and his sentence was below the range). Finally, Torsone has offered no facts suggesting the existence of any agreement with the government, and the plea agreement specifically states that "[t]here have been no other promises or agreements, express or implied."

*United States v. Chinawat*

## I. ADEQUACY OF THE INTERPRETER

Chinawat argues that the district court's failure to provide him with a qualified Thai interpreter violated his statutory rights under the Court Interpreters Act, 28 U.S.C. § 1827 ("the Act"); his Sixth Amendment rights to effective assistance of counsel and to confront the witnesses against him; and his right of allocution at sentencing.

The Act charges the trial court with the responsibility of monitoring interpreters and discharging an interpreter who is not able to communicate as required. 28 U.S.C. § 1827(e)(1). The requirements of the Act are satisfied in a criminal case "if an interpreter is by the defendant's side continuously interpreting the proceed-

ings." *United States v. Jong Moon Lim,* 794 F.2d 469, 470 (9th Cir.1986) (internal quotations and citation omitted). Because there is no doubt that Chinawat was entitled to an interpreter, we address only the adequacy of the interpretation provided.

■ Chinawat contends that Xidaj Lo, the alternate interpreter appointed by the court to serve during the second week of trial, was unable to keep up with the testimony and thus did not interpret simultaneously and that Chinawat had trouble understanding Xidaj Lo. However, Chinawat did not object to Xidaj Lo serving as interpreter, which weighs against a finding of abuse of discretion. *See United States v. Yee Soon Shin,* 953 F.2d 559, 561 (9th Cir.1992). Moreover, there is nothing in the record to indicate that Chinawat could not understand Xidaj Lo, that Xidaj Lo could not understand the witnesses, or that Xiday Lo's interpreting was so inadequate as to make the trial fundamentally unfair. *See Jong Moon Lim,* 794 F.2d at 470.

The use of interpreters in the courtroom is a matter within the trial court's discretion, and a trial court's ruling on such a matter will be reversed only for clear error. *United States v. Mayans,* 17 F.3d 1174, 1179 (9th Cir.1994). We find no error.

## II. ALLOCUTION

■ Chinawat also claims that the interpreting by a different interpreter at sentencing was so "nonsensical" that he simply stopped speaking and was thus denied the opportunity to speak on his own behalf, in violation of Federal Rule of Criminal Procedure 32(c)(3)(C). *See United States v. Navarro–Flores,* 628 F.2d 1178, 1184 (9th Cir.1980) (holding that defendant has right to fully present all mitigating information and the district court has duty to listen and carefully and seriously consider such information). While the record re-

flects some garbled translation, we cannot conclude that Chinawat's right to allocution was denied. Chinawat sought to make two points: (1) that he was "illegally" taken from Cambodia and brought to the United States for trial, and (2) that he would be punished twice-once in the United States and again upon his return to Thailand after his release. The district court clearly understood Chinawat's first argument and addressed it fully, noting that it had previously ruled that because Chinawat had no due process rights until he entered the United States it could not take into account the fact that he may not have been legally brought into the country. While the court did not specifically address Chinawat's second point, it, too, is one the court had no discretion to consider during sentencing. Accordingly, Chinawat cannot show prejudice. Chinawat's contention that he had more to say but chose not to lacks merit because the right of allocution is not unlimited. *See, e.g., United States v. Kellogg,* 955 F.2d 1244, 1250 (9th Cir.1992). The court addressed Chinawat and invited him to respond with a statement bearing on mitigation. The court did not cut him off or intimidate or otherwise deter him from speaking. *Cf. United States v. Sarno,* 73 F.3d 1470, 1503 (9th Cir.1995). This and the court's careful consideration of the defendant's statement is all that was required.

## III. SPEEDY TRIAL

Chinawat also argues that the district court violated his rights under the Speedy Trial Act (the Act), 18 U.S.C. § 3161, when it granted his co-defendant's motion for a continuance. The Act excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). While we review a district court's application of the Act *de novo, United States v. Tanh Huu Lam,* 251 F.3d 852, 855 (9th Cir.), *amended by* 262 F.3d 1033, *and cert. denied,* —— U.S. ——, 122 S.Ct. 503, 151 L.Ed.2d 413 (2001), we review a trial court's ruling on a request for a continuance for abuse of discretion, *United States v. Rude,* 88 F.3d 1538, 1550 (9th Cir.1996). In determining whether a delay in a co-defendant's trial date was reasonable under the Act, we consider the totality of the circumstances. *See United States v. Messer,* 197 F.3d 330, 338 (9th Cir.1999). Here, the delay was both brief (only three months) and necessary to facilitate the efficient use of judicial resources in a complex conspiracy case involving evidence and witnesses from abroad. Chinawat's complaint that the delay hindered his access to one of two competent Thai interpreters is undercut by his inability to show prejudice, as noted above. The district court did not abuse its discretion in granting the continuance in the interests of justice and efficiency. *Id.* at 338–39.

Chinawat's argument that the district court should have granted a severance is also without merit. We review denial of a motion to sever for abuse of discretion. *United States v. Patterson,* 819 F.2d 1495, 1501 (9th Cir.1987). The test for abuse of discretion is "whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *Id.* Chinawat does not meet that test.

## IV. NEW TRIAL MOTION

Chinawat contends that the court erred in denying his motion for a new trial based on a comment made by the prosecutor in closing argument. The comment, which was merely rhetorical, was not "of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *United States v.*

*Mende,* 43 F.3d 1298, 1301 (9th Cir.1995) (internal quotations and citation omitted). And even if the comment were deemed improper, it was isolated and, given the weight of the evidence against Chinawat, could not have affected the verdict. *See United States v. Tarazon,* 989 F.2d 1045, 1051–52 (9th Cir.1993). The district court did not abuse its discretion. *See United States v. Sayetsitty,* 107 F.3d 1405, 1408 (9th Cir.1997).

The judgments are affirmed.

AFFIRMED.

---

**1.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

