**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

v.

BIAO HUANG,
     *Defendant-Appellant.*

No. 10-10389

D.C. No.
1:09-cr-00014-
WHA-1

OPINION

Appeal from the United States District Court
for the District of the Northern Mariana Islands
William Alsup, District Judge, Presiding

Argued and Submitted
June 13, 2012—Honolulu, Hawaii

Filed August 8, 2012

Before: Mary M. Schroeder, Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

George Anthony Long, Law Office of G. Anthony Long, San Jose, Saipan, Northern Mariana Islands, for defendant-appellant Biao Huang.

Karon V. Johnson (argued) and James J. Benedetto (on the briefs), Assistant United States Attorneys, Office of the United JStates Attorney for the Districts of Guam and the

Northern Mariana Islands, Hagatna, Guam and Saipan, Northern Mariana Islands, for plaintiff-appellee the United States of America.

---

**OPINION**

CALLAHAN, Circuit Judge:

Defendant-Appellant Biao Huang, a native and citizen of China residing in the Commonwealth of the Northern Mariana Islands, pleaded guilty to conspiracy and possession with intent to distribute various quantities of methamphetamine, including one quantity of more than 900 grams. The district court sentenced Huang to 135 months in prison. Huang appeals his sentence on the ground that he was the victim of sentencing entrapment, which "occurs when a defendant is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment." *United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009). Huang also argues that he should not have received, pursuant to U.S.S.G. § 2D1.1(b)(5), a two-point enhancement for an offense involving the importation of a controlled substance, and that his sentence is substantively unreasonable.

Finding no error in Huang's sentencing, we affirm the district court. Huang was not subject to sentencing entrapment because Huang had the intent and capacity to produce more than 900 grams of methamphetamine and acted on that intent without hesitation. We join the Fifth and Eleventh Circuits in holding that a defendant need not be personally involved in the importation of illegal drugs to receive the § 2D1.1(b)(5) importation enhancement; it is enough for the government to show that the drugs were imported. Finally, Huang's sentence was reasonable even though it was the same as his co-defendant's sentence; the co-defendant cooperated with the government while Huang did not.

## BACKGROUND

In 2008, a confidential source on Saipan, in the Northern Mariana Islands, advised agents of the Drug Enforcement Administration ("DEA") that he could purchase large quantities of "ice," or mostly pure methamphetamine, from Chinese nationals residing in the Islands. At the direction of the DEA and other government agents, the confidential source contacted one of these nationals, who directed him to a "source of supply" named Sheng Lian. Lian and Huang had gone to school together in China, and later worked for a company owned by Huang's father, before relocating to a shared residence in Saipan.

On Huang's assurances that the confidential source was trustworthy, Lian met the confidential source and sold him 9.7 net grams of methamphetamine for $5,000. A few months after this initial sale, the confidential source contacted Huang to make another controlled buy. Huang then sold the confidential source 4.8 net grams of methamphetamine for $1,500. A couple of months later, Huang and Lian sold the confidential source another 5.8 net grams of methamphetamine for $1,500.

A few months after these initial transactions, the confidential source contacted Lian and explained that his (the source's) boss wanted to purchase large quantities of methamphetamine. Undercover agents and the confidential source then met with Lian, who agreed to sell one of the agents 900 grams of methamphetamine for $250,000. Lian also stated he would be willing to meet the agent's request for ten kilograms of methamphetamine for delivery in American Samoa and 50 kilograms for delivery in Hawaii during an initial six-month period. Lian explained that his boss had been trafficking methamphetamine in Saipan for twelve years, and that his boss was the biggest dealer on the island.

Two days after this meeting, one of the undercover agents and the confidential source met with Huang and Lian. Lian

explained that their boss had agreed to the large shipments to American Samoa and Hawaii and that everything was "ready to go" for the sale of the 900 grams. The parties dispersed, after which Huang called the confidential source and said that he (Huang) and Lian were ready. The parties met in a hotel room, where Lian handed over the methamphetamine. Lian, Huang, and the two undercover agents present were arrested.

Following his arrest, Lian waived his *Miranda* rights and talked about his relationship with Huang, Huang's relationship with the confidential source, and the initial sale of 9.7 grams. Huang, in contrast, refused to cooperate.

A grand jury returned a five-count indictment against Huang and Lian. Count One charged both defendants with conspiracy to distribute more than 900 grams of "methamphetamine hydrochloride," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, while Counts Two through Five charged them with possession with intent to distribute "d-methamphetamine hydrochloride in the form commonly known as 'ice,'" in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C). Specifically, Count Two charged Lian for 9.7 grams of "ice"; Count Three charged Huang for 4.8 grams; Count Four charged both defendants for 5.8 grams; and Count Five charged both defendants for 947 grams.

Lian entered into a plea agreement that provided for a sentence of 135 months. In exchange, Lian agreed to cooperate with the government by "disclos[ing] all information with respect to the activities of himself and his co-defendant, Huang, Biao." Huang, meanwhile, chose to plead guilty without the benefit of a written plea agreement. During the change of plea colloquy, Huang and his lawyer admitted to the drug quantities charged in the indictment.

The Presentence Investigation Report ("PSR") set the applicable offense level at 37, which would have yielded a sentencing range of 210 to 262 months. Huang filed no writ-

ten objections to the PSR. However, Huang did object before and during the sentencing hearing to the PSR's recommended sentencing range on numerous grounds, one of which the government conceded and several of which the district court accepted.

Two of Huang's arguments that the district court rejected, and that Huang raises on appeal, were: (1) Huang was a "small" dealer whom the government induced to sell a much larger quantity of methamphetamine, and such inducement constituted sentencing entrapment that justified a lower sentence, and (2) a two-point importation enhancement under U.S.S.G. § 2D1.1(b)(5) was inappropriate because Huang did not himself import any methamphetamine. Regarding sentencing entrapment, the district court explained that it "does not find that the defendant's will was overcome. The burden is on the defendant, and the Court rejects the . . . sentence entrapment argument by the defense." The court added, "[t]he defendant is accountable certainly for 911 grams of methamphetamine." Regarding the importation enhancement, the court explained that a "preponderance of evidence, let alone clear and convincing evidence," showed that Huang satisfied the terms of the enhancement.

The court calculated Huang's final base offense level to be 31. With a criminal history category of one, Huang's applicable sentencing range was 108 to 135 months. *See* U.S.S.G. Ch. 5, Pt. A. The district court sentenced Huang to 135 months after explaining that Huang had shown no remorse and acted solely for profit. The court also cited the fact that Huang had not cooperated with the government, unlike his co-defendant Lian Sheng, who also received 135 months. The district court entered judgment and Huang timely appealed.

On appeal, Huang re-asserts two of the arguments the district court rejected: he was the victim of "sentencing entrapment" and the two-point importation enhancement was inappropriate. Huang also argues that his 135-month sentence

is substantively unreasonable because he received the same sentence as Lian, who promised to cooperate but, according to Huang, did not.

## STANDARD OF REVIEW

We review the district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Crowe*, 563 F.3d 969, 977 (9th Cir. 2009). We have not resolved whether we review a district court's application of the Guidelines to the facts *de novo* or for abuse of discretion. *See United States v. Swank*, 676 F.3d 919, 921-22 (9th Cir. 2012). However, in the context of sentencing entrapment, we have held that a "district court was reasonable in rejecting [the defendant's] argument of sentencing entrapment and did not abuse its discretion." *Mejia*, 559 F.3d at 1118. In this case, even applying *de novo* review, the outcome does not change. Finally, if the district court correctly calculated the applicable sentencing range, we review the sentence for reasonableness. *United States v. Dallman*, 533 F.3d 755, 760 (9th Cir. 2008).

## DISCUSSION

### A.   Sentencing entrapment

**[1]** Sentencing entrapment occurs "when a defendant is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment." *Mejia*, 559 F.3d at 1118. The defense of sentencing entrapment serves to prevent the government from " 'structur[ing] sting operations in such a way as to maximize the sentences imposed on defendants' without regard for the defendant's culpability or ability to commit the crime on his own." *United States v. Schafer*, 625 F.3d 629, 640 (9th Cir. 2010) (quoting *United States v. Staufer*, 38 F.3d 1103, 1107 (9th Cir. 1994)).

**[2]** A defendant "bears the burden of proving sentencing entrapment by a preponderance of the evidence." *United States v. Parrilla*, 114 F.3d 124, 127 (9th Cir. 1997). Specifically, the defendant must show he was predisposed to commit only a lesser crime, *Staufer*, 38 F.3d at 1108, *i.e.*, that he lacked the intent and capability to produce the larger quantity of drugs, *Mejia*, 559 F.3d at 1118; *United States v. Naranjo*, 52 F.3d 245, 250 n.13 (9th Cir. 1995); *see also United States v. Si*, 343 F.3d 1116, 1128 (9th Cir. 2003) (explaining that a defendant must show the government engaged in "outrageous official conduct which caused the individual to commit a more significant crime"). The district court must make express factual findings regarding whether the defendant has met his burden. *United States v. Riewe*, 165 F.3d 727, 729 (9th Cir. 1999) (per curiam).

Where a sentencing court determines that a defendant has met his burden of proof, the court ordinarily may grant a downward departure from the applicable sentencing range. *Id.* However, where, as here, a statutory minimum sentence applies, the court does not have the authority to depart below that sentence absent application of the safety valve provision in U.S.S.G. § 5C1.2 or a substantial assistance motion from the government.[1] *United States v. Wipf*, 620 F.3d 1168, 1170 (9th Cir. 2010). In such a case, the proper course is to "decline to apply the statutory penalty provision for the greater offense that the defendant was induced to commit, and instead apply the penalty provision for the lesser offense that the defendant was predisposed to commit." *Riewe*, 165 F.3d at 729 (quotation marks and citation omitted); *see also United States v. Castaneda*, 94 F.3d 592, 595 (9th Cir. 1996); U.S.S.G. § 2D1.1 Commentary, Application Note 12. In other words, the court should subtract "the amount of drugs tainted by the entrapment" and use the minimum sentence, and sen-

---

[1]Huang sought, and was denied, relief under the safety valve provision. He does not appeal the district court's ruling on this issue.

tencing range, that pertain to the modified drug quantity. *Riewe*, 165 F.3d at 729.

In this case, Huang was charged with, and pleaded guilty to, possession with intent to distribute more than 900 grams of "ice," a methamphetamine mixture. Such offense carries a minimum sentence of ten years and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A)(viii). If the district court were to subtract, on account of sentencing entrapment, the 900 grams in Count One and the 947 grams in Count Five of the indictment, leaving only the 10.6 grams charged in Counts Three and Four, Huang would have faced a statutory minimum sentence of only five years. 21 U.S.C. § 841(b)(1)(B)(viii).

Huang, however, did not meet his burden of showing sentencing entrapment by a preponderance of the evidence.[2] Huang twice sold five to six grams, and Lian ten grams, of methamphetamine to the government's confidential source. A few months after the last of these sales, Lian readily agreed to sell an undercover agent 900 grams for $250,000, and to provide "initial" shipments of ten kilograms to American Samoa and 50 kilograms to Hawaii. Lian bragged that "their" methamphetamine came from the biggest dealer on Saipan, who in turn got it from China. Huang's complicity in Lian's actions and statements was evidenced by the fact that, when the time came to exchange the drugs and money, Huang made the call to the undercover agent. Huang then accompanied Lian to the meetings. The district court also heard proffered testimony from a DEA agent that Lian said something to the effect of "500 [grams] is small for us;" that Huang never expressed reluctance (in fact, "it seemed like they were laugh-

---

[2]The government argues that a defendant waives his sentencing entrapment claim as a matter of law where he pleads guilty and admits to the quantity of drugs charged in the indictment. We need not decide this issue because Huang's sentencing entrapment claim, even if it is not waived, fails on the facts.

ing and having a good time"); and that during the time it took to seal the 900-gram deal "it was [Lian and Huang] who repeatedly contacted the confidential source in an attempt to get that deal completed."

**[3]** Huang offered no evidence that he was, in his words, a "novice or inexperienced dealer." Indeed, the only three facts that could support his claim of sentencing entrapment are that: (1) the undercover agent, not Huang or Lian, initiated the 900-gram sale and pursued it through a series of calls; (2) the only other methamphetamine sales Huang is known to have made involved small quantities; and (3) Huang was merely present when Lian first talked about dealing in large quantities. However, Huang and Lian showed only enthusiasm and wherewithal once the agent suggested the larger deal; Huang introduced no evidence that the smaller sales he was caught making were typical; and Huang actively participated in the 900-gram sale after Lian set it up. There is no evidence of the type of reluctance and inducement present in cases where we have found sentencing entrapment. *See United States v. McClelland*, 72 F.3d 717, 726 n.6 (9th Cir. 1995) (affirming district court's entrapment finding where defendant was emotionally vulnerable and resisted government agent's repeated efforts to convince him to kill his wife); *Naranjo*, 52 F.3d at 251 (suggesting entrapment might exist where DEA had no evidence defendant previously engaged in drug trafficking, defendant resisted undercover agent's repeated efforts to buy large quantity of cocaine, and defendant could not pay for large quantity); *Staufer*, 38 F.3d at 1105, 1108 (finding entrapment where undercover agent and confidential informant, motivated by a possible lower sentence for his own crimes, insisted over defendant's reluctance that he sell an unusually large quantity of drugs for an inflated price).

In short, Huang failed to prove that he lacked the intent and capability to produce and sell 900 grams of methamphetamine, *Mejia*, 559 F.3d at 1118; *Naranjo*, 52 F.3d at 250 n.13, or that the government engaged in "outrageous official con-

duct" that overcame his predisposition to sell only smaller amounts, *Schafer*, 625 F.3d at 639-40 (quotation marks and citation omitted). Instead, the evidence shows only Huang's "complete willingness to proceed, even as the size of the proposed transaction[s] increased over the course" of time. *United States v. James*, 487 F.3d 518, 529 (7th Cir. 2007). On this record the district court properly rejected Huang's claim of sentencing entrapment.

Huang nonetheless raises two objections to the district court's ruling. He first argues that the district court did not make the specific factual findings required when the court rejects a sentencing entrapment claim. *See Riewe*, 165 F.3d at 729 (remanding where district court did not expressly reject sentencing entrapment claim and instead said only that the PSR "correctly calculate[d] the sentencing guidelines" (internal quotation marks omitted)); *Parrilla*, 114 F.3d at 128 (remanding where defendant disputed PSR's factual statements and district court "never drew any explicit conclusions about the factual support for Parrilla's sentencing entrapment claim"); *Naranjo*, 52 F.3d at 251 (remanding where it was unclear "what findings the district court relied on in finding Naranjo predisposed to cocaine dealing," especially given the absence of any real evidence of such predisposition). Here, however, the district court plainly stated that it did "not find that the defendant's will was overcome. The burden is on the defendant, and the Court rejects the . . . sentence entrapment argument by the defense." In addition, Huang did not dispute the PSR's findings and the district court expressly attributed the large quantity of methamphetamine to Huang, saying "[t]he defendant is accountable certainly for 911 grams of methamphetamine." These statements, although not pellucid, adequately explained the district court's rationale for rejecting Huang's sentencing entrapment claim.

**[4]** Second, Huang argues that the district court erred by not analyzing his sentencing entrapment claim using the five factors identified in *McClelland*, 72 F.3d at 722. However,

even if the McClelland factors are applicable, Huang was not the victim of sentencing entrapment.[3] While the government initially suggested the 900-gram deal, government agents did not provide undue incentives and Huang was a known drug dealer who agreed without hesitation to the larger sale for profit. No matter what test applies, Huang fails to show that the district court erred in rejecting his sentencing entrapment claim.

## B.   Importation enhancement

[5] The Sentencing Guidelines provide for a two-level enhancement in the applicable sentencing range if, among other things, "the offense involved the importation of amphet-amine or methamphetamine or the manufacture of amphet-amine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully." U.S.S.G. § 2D1.1(b)(5)(A).[4] The district court concluded that this enhancement was appropriate by at least a preponderance of the evidence.

[6] Huang argues that § 2D1.1(b)(5) requires the government to show that Huang himself imported the methamphet-amine. However, by its plain language, § 2D1.1(b)(5) applies to any "offense" that "involved" the importation of methamphet-amine.[5] In contrast, other enhancements under § 2D1.1 apply

---

[3]These factors are: "(1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." *McClelland*, 72 F.3d at 722. "Although none of these factors is controlling, the defendant's reluctance to engage in the criminal activity is the most important." *Id. McClelland* applied these factors as a test for the predisposition element of the defense of legal entrapment, not as a test for sentencing entrapment. *See id.*

[4]The § 2D1.1(b)(5) enhancement previously was found at § 2D1.1(b)(4).

[5]There is no dispute that the methamphetamine Huang and Lian sold was imported from China.

only to a "defendant" who "unlawfully imported or exported a controlled substance" or who "was directly involved in the importation of a controlled substance." U.S.S.G. § 2D1.1(b)(3), (b)(14)(C). If the Sentencing Commission had intended to limit § 2D1.1(b)(5) to defendants who personally imported methamphetamine, it would have used the more restrictive language it included in these other enhancements. Cf. *In re Egebjerg*, 574 F.3d 1045, 1050 (9th Cir. 2009) ("[W]e . . . presume that if Congress includes particular language in one section of a statute but omits it in another, Congress acted intentionally in that exclusion.").

[7] Following this reasoning, the two circuits that have considered Huang's argument have rejected it. *See United States v. Rodriguez*, 666 F.3d 944, 946 (5th Cir. 2012) ("Even if we accept Rodriguez's narrower interpretation of 'importation,' it means only that she did not import the drugs, not that her possession did not involve importation. The scope of actions that 'involve' the importation of drugs is larger than the scope of those that constitute the actual importation."); *United States v. Perez-Oliveros*, 479 F.3d 779, 784 (11th Cir. 2007) (holding that § 2D1.1(b)(5) does not "apply to only those defendants who themselves transport methamphetamine across the border"). We agree with the Fifth and Eleventh Circuits that a defendant need not be personally involved in the importation of illegal drugs to receive an enhancement under § 2D1.1(b)(5); it is enough for the government to show that the drugs were imported.

[8] Huang also contends that he had to know (but did not) that the methamphetamine he sold was imported. Whether § 2D1.1(b)(5) requires such knowledge is an open question. *See, e.g.*, *Rodriguez*, 666 F.3d at 947. As in *Rodriguez*, we need not settle this issue here because Huang knew the source of the methamphetamine. *Id.* The record shows that: (1) Lian and Huang were childhood friends who left China together and who lived and worked together in Saipan; (2) Lian told the confidential source and undercover government agents

that "their" methamphetamine came from China; and (3) Huang was directly involved with Lian in selling most of the methamphetamine at issue in this case, and also sold some on his own. These facts establish by a preponderance of the evidence that Huang knew he was selling imported methamphetamine.[6] *See United States v. Romero-Rendon*, 220 F.3d 1159, 1160-61 (9th Cir. 2000) (explaining that the government must prove factors enhancing a sentence by a preponderance of the evidence, and that district court can rely on an unchallenged PSR to find this burden met).

**[9]** Finally, Huang argues that there was no basis for applying the importation enhancement because he was not charged with "any importation or manufacturing offense" under 21 U.S.C. §§ 952(a), 960, or 963. However, we see no reason why the enhancement cannot apply to the offenses proscribed by 21 U.S.C. §§ 841 and 846, so long as the offense "involved the importation of," U.S.S.G. § 2D1.1(b)(5)(A), a "controlled" or "counterfeit" substance, 21 U.S.C. § 841(a)(1)-(2). Indeed, courts repeatedly have upheld the enhancement for convictions secured only under those provisions. *See, e.g.*, *Rodriguez*, 666 F.3d at 946; *Perez-Oliveros*, 479 F.3d at 781. Thus, we hold that the § 2D1.1(b)(5) importation enhancement may be applied to a defendant convicted under 21 U.S.C. §§ 841 and/or 846, even if he is not also convicted under 21 U.S.C. §§ 952(a), 960, or 963.

---

[6]Huang faults the district court for failing to make any specific factual findings to support the enhancement. However, the court adopted the "Offense Conduct" facts set forth in the PSR and appropriately concluded that they established that Huang qualified for the enhancement by at least a preponderance of the evidence. *See* Fed R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact."); *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027 (9th Cir. 2000) (explaining that district court may adopt PSR's factual findings where they are supported by the record).

## C.  Substantive reasonableness

Federal sentences must be procedurally and substantively reasonable. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). When a district court's " 'discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.' " *Id.* at 994 (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

Huang argues that his sentence is substantively unreasonable because it is the same sentence imposed on Lian, his co-defendant. According to Huang, he should have received a lower sentence because Lian promised to cooperate with the government but "did not fulfill his obligation," while Huang "did not make any false promises" or "breach any promise" to the government.

The record belies Huang's argument. Lian entered into a plea agreement in which he agreed to cooperate with the government, while Huang chose to plead guilty without the benefit of a plea agreement. The PSR explained that Lian cooperated with the government by talking about his relationship with Huang, Huang's relationship with the confidential source, and the initial sale of 9.7 grams. At sentencing, the government also proffered the testimony of a DEA agent that Lian was "fully cooperative from day one." Huang, in contrast, "declined and refused to provide any information concerning the offenses" despite "opportunities to cooperate and be interviewed." Huang presented no evidence to contradict the PSR or the government's proffer.

The district court adopted the PSR's findings and "accept[ed] the proffer by the investigating officer that Mr. Lian, Sheng put himself in [a] somewhat different position in terms of . . . his efforts to cooperate." The district judge then reasonably concluded that Lian "has the more righteous position, in

my opinion, having received 135 months, because at least he agreed to cooperate and be truthful to some extent."

**[10]** Although Huang does not explain what "false" promises Lian allegedly made to the government, he argued during the sentencing hearing that Lian provided less than the full cooperation required by his plea agreement when he "declined to identify the source" of the methamphetamine he and Huang sold. However, the district court recognized that Lian's cooperation was "limited," and, in any event, the limits of Lian's cooperation do not change the fact that Lian cooperated while Huang did not. The district court reasonably relied on Huang's lack of cooperation in sentencing Huang.

## CONCLUSION

The district court properly sentenced Huang. Huang has not shown that he was the victim of sentencing entrapment; he had the intent and capacity to sell 900 grams of methamphetamine and acted on that intent without hesitation. The district court properly applied the U.S.S.G. § 2D1.1(b)(5) sentencing enhancement for an offense involving the importation of drugs because the government was not required to show that Huang himself imported the methamphetamine he sold. There was no dispute the methamphetamine was imported from China, and Huang more likely than not knew of the methamphetamine's origin. Finally, Huang's sentence, as compared to Lian's, is reasonable given that Lian cooperated with the government while Huang did not. The district court's judgment is **AFFIRMED**.