Commonwealth v. Rourke.

<hr>

### COMMONWEALTH vs. MICHAEL ROURKE.

Money acquired by the illegal sale of intoxicating liquor may nevertheless be the subject of larceny from the possessor.

CUSHING, J. The single question presented by the record here, is, whether an indictment can be sustained for the larcenious taking of money, which the party, from whom it is

taken, had obtained by the sale of intoxicating liquors in violation of the laws of the commonwealth ?

It has been very ingeniously argued by the defendant's counsel, that money, so obtained, is destitute of the rights of property, and being thus in a manner outlawed, is not entitled to legal protection, and is incapable of being the subject-matter of larceny ; in a word, that it may be stolen with absolute impunity.

We might have supposed the question to be precluded by the provision of the statute, which enacts, that, in the prosecution of any offence committed in stealing, embezzling, destroying, injuring, or fraudulently receiving or concealing any money or other chattels, it shall be sufficient, and shall not be deemed a variance, if it be proved on the trial, that at the time when the offence was committed, either the actual or constructive possession, or the general or special property, in the whole or in any part of the money or chattels, was in the person alleged in the indictment to be the owner thereof. Rev. Sts. *c.* 133, § 11. By force of this statute, certainly, whatever might be the rule at common law, the question of variance no longer depends exclusively on the proof of property, either general or special, of the thing stolen ; for that is but one of the alternative conditions of the statute ; the other being possession merely. It is admitted in reply, that possession is *primâ facie* evidence of property ; and then it is argued that, as evidence, this may be rebutted by proof of the actual fact, to wit, of property in some person other than the one named in the indictment ; and the case is put of possession by the servant, and proof of property in the master. But these are questions technical merely, of pleading or variance, not of principle.

We apprehend it would be no answer to an indictment for larceny properly drawn, to say that the object larceniously taken, belonged to nobody, provided the thing were in its nature property ; 2 East, P. C. 606 ; 2 Russ. on Crimes, (6th Am. ed.) 96 ; or that it belonged to some unknown owner ; for then, by force of the statute, and by common law too, it would be protected in the hands of the possessor. But

it is further contended, that such possessor must be a lawful possessor; nay, if he be proved owner against all the world, yet, if the property be acquired by breach of law, the law will in no respect exert itself to aid the guilty party to retain the possession, or to regain it when lost. This position is advanced on the strength of the case of *Gregg* v. *Wyman*, 4 Cush. 322, and other cases of the same class, in which it has been adjudged as a doctrine of the common law, that courts of justice will not afford their assistance for the enforcement of any contract based on a criminal or unlawful undertaking or act.

We fully recognize the soundness of this doctrine, supported as it is by obvious considerations of public policy and justice. But the inference, deduced therefrom in argument, by no means follows. That same common law, which, in its integrity and wisdom, refuses to lend itself to be the instrument, even indirectly, for the execution of a criminal contract, will as little condescend to throw its mantle over crime itself. The law punishes larceny, because it is larceny; and, therefore, one may be convicted of theft, though he do but steal his own property, from himself or his bailee. 7 H. VI. 43 a; 3 Co. Inst. 110. And the law punishes the larceny of property, not solely because of any rights of the proprietor, but also because of its own inherent legal rights as property; and, therefore, even he, who larceniously takes the stolen object from a thief whose hands have but just closed upon it, may himself be convicted therefor, in spite of the criminality of the possession of his immediate predecessor in crime. This principle is coeval with the common law itself as a collection of received opinions and rules, for we have to go back to the Year-Books to find its first judicial announcement. The leading decision is the case of a so-called John at Stile, in 13 Edw. IV. 3 b., where it was held by the judges that if A. steal the goods of B., and afterwards C. steal the same goods from A., in such case C. is indictable both as to A. and as to B. This decision was afterwards affirmed *arguendo* in 4 Hen. VII. 5 b. The argument in the Year-Books, it is true, turns on the point of the property not being changed by the two successive

larcenies; but the decision has a broader foundation than this mere technicality; for the case there finds that C. is indictable as to B. as well as A. And, in the instance above cited, of one indicted for taking feloniously from his own bailee, Staundforde is careful to note that the property was charged as being in the bailor; (P. C. 26;) which proves the intent of the judges to hold the felonious taking punishable as such, regardless of the personal relation of the question of property. In a modern case, at the Assizes, where game was taken larceniously from the person of a party unqualified, and who by sundry statutes was forbidden not only to kill game, but even to have it in his possession, the possession was nevertheless held sufficient for the purposes of an indictment for larceny. *Jones's case*, Burns's Just. Larceny, sec. 1, No. 4.

In a later case at the Old Bailey, there is a ruling supposed, by some, to be in conflict with the preceding; but not so in fact, for several reasons; more especially in that the latter case is one of embezzlement, not of larceny. *Regina* v. *Hunt*, 8 Car. & P. 642.

We do not say our doctrine is good law, merely because it was in principle so adjudged in the time of the Plantagenets and the Tudors; but we say it is good law, also, because it is reasonable and just; because every subsequent authority in England, such as Hale, 1 Hale, P. C. (Am. ed.) 507; East, 2 East, P. C. 654; Russell, 2 Russ. on Crim. (6th Am. ed.) 89, has adopted and approved it; because it has been affirmed by modern judicial opinion in England; *Wilkins's case*, 2 Leach, 586; because it has already been recognized in the United States; *Ward* v. *The People*, 3 Hill, 396; and because it thus bears that genuine stamp of venerable time, which consists, not in the antiquity of date—for there may be old errors as well as new ones—but in having stood the test of the scrutiny of many successive ages. We think it is well established at common law, therefore, that property, though unlawfully acquired, may nevertheless be the subject-matter of larceny; and we think the cases decided are broad enough to cover the present or any similar form of unlawful acquisition. So well persuaded

are we of the reasonableness and expediency of this rule, that, if it were a question of the most novel impression, instead of being, as it is, older than most of our law-books, we should be disposed to decide in the same way, and thus make it to be the law. It might be reasoned out as follows :

1. It is fundamental, in our own and in all other laws of property, that the possession of one is good against all others, who cannot show a better right of possession. It is the rule of strictly technical law, not less than of general theory. Thus, it has been expressly decided by this court, in a plea of land, that, as between two persons, each of whom entered without right, the older trespasser can maintain his possession by law as against the younger one, although he himself be subject to be ousted at will by the true tenant in fee. *Hubbard* v. *Little*, 9 Cush. 475. This illustration of the legal effect of actual possession of land is directly applicable to the present point, with the qualification only, that possession of chattels, partic-ularly money, would have still stronger arguments of legal convenience in its favor.

2. If, looking beyond the mere question of property, we pass to considerations of public policy, this may be regarded in two points of view, one, of convenience in the administra-tion of justice, the other, of higher ethical relation. As to the former point, it is not easy to conceive any thing, which would more seriously embarrass the public ministers of jus-tice, and obstruct its administration, than if it were held that any element of illegality in the acquisition of property rendered it incapable of being the subject of larceny, and if, as a consequence, the necessity followed, in every case, to go into the inquiry how the party complaining acquired the property.

As to the latter point, if the question be put in the form most favorable to the argument for the defendant here, it stands thus : Of the alternative moral and social evils, which is the greater,—to deprive property unlawfully acquired of all protection as such, and thus to discourage unlawful acqui-sition but encourage larceny; or to punish, and so discourage

34 *

larceny, though at the possible risk of thus omitting so far forth to discourage unlawful acquisition? The balance of public policy, if we thus attempt to estimate the relative weight of alternative evils, requires, it seems to us, that the larceny should be punished. Each violation of law is to be dealt with by itself. The felonious taking has its appropriate and specific punishment; so also has the unlawful acquisition.

*Exceptions overruled.*

*B. F. Butler*, for the defendant.

*Clifford*, (attorney-general,) for the commonwealth.