**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. HORACIO ANTONIO YUMAN-HERNANDEZ, AKA Oracio Antonio Yuman-Hernandez, *Defendant-Appellant*. | No. 11-50219 D.C. No. 2:08-cr-00701-RT-4 OPINION |

Appeal from the United States District Court
for the Central District of California
Robert J. Timlin, Senior District Judge, Presiding

Argued and Submitted
January 9, 2013—Pasadena, California

Filed April 8, 2013

Before: Alfred T. Goodwin and William A. Fletcher,
Circuit Judges, and Edward R. Korman, Senior District
Judge.[*]

Opinion by Judge Goodwin

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a sentence imposed following a conviction on charges arising from a conspiracy to rob a cocaine stash house, the panel held that in order to establish lack of predisposition to support a finding of sentencing entrapment in the case of a fictitious stash house robbery, a defendant need only show either a lack of intent or a lack of capability to deal in the quantity of drugs charged.

The panel clarified that outrageousness is not itself an independent prong of sentencing entrapment, and concluded that the district court did not abuse its discretion in finding that the defendant failed to carry his burden.

### COUNSEL

Timothy A. Scott, San Diego, California, for Defendant-Appellant.

Rodrigo A. Castro-Silva, Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GOODWIN, Senior Circuit Judge:

Horacio Antonio Yuman-Hernandez appeals his 180-month statutory mandatory-minimum sentence, assigning error to the district court's rejection of his sentencing entrapment argument. He argued a lack of predisposition to commit an offense involving the amount of cocaine charged, and was thus entrapped. The sentence is affirmed.

## I. BACKGROUND

After a bench trial, Yuman-Hernandez was convicted of charges arising from a conspiracy to rob a cocaine stash house and the use of a firearm. As part of a reverse sting operation targeting home-invasion crews, an Alcohol, Tobacco, and Firearms ("ATF") special agent made contact with the lead defendant in this case, Roberto Ramirez-Ramirez. The agent presented himself as a drug courier that serviced a Los Angeles stash house containing twenty to twenty-five kilograms of cocaine. The night before the invented robbery, Ramirez brought his crew, including Yuman-Hernandez, to meet the agent. The agent essentially repeated the information he had originally presented to Ramirez, and offered the participants, including Yuman-Hernandez, an opportunity to withdraw. The next day, Yuman-Hernandez and the others arrived to meet with the agent prior to the robbery, prepared to proceed. The crew then traveled to a parking lot where they were arrested. At no point during his involvement did Yuman-Hernandez indicate any unwillingness to participate. In fact, a co-defendant's testimony showed that Yuman-Hernandez, after his initial recruitment, helped advance the conspiracy by specifically

recruiting the co-defendant, as well as by driving a vehicle with Ramirez and others to obtain an additional firearm. Upon arriving at the location of the firearm transaction, Ramirez requested that Yuman-Hernandez drive to retrieve marijuana from Ramirez's home. He did so and returned. Ramirez then traded the drugs for an assault rifle and ammunition magazines for use in the hold-up.

The co-defendant further testified that Ramirez told Yuman-Hernandez and others that Ramirez would pay them after he had sold the cocaine. The co-defendant also testified that Yuman-Hernandez and Ramirez had previously approached him to help transport marijuana between Arizona and California.

According to a government expert at trial, twenty to twenty-five kilograms of cocaine is a common amount found in a stash house. Further, the ATF special agent testified that he chose his role as a drug courier for such a stash house because it would be believable given Los Angeles's position as a trafficking hub.

At the sentencing hearing, the district court noted these facts, concluding that the amount of cocaine chosen for the sting was "not really an arbitrary decision . . . to create the weight and quantity . . . such as to put the people involved in the operation subject to a very severe penalty," but was rather a product of creating a believable sting. In addressing the issue of sentencing entrapment, the district court stated that Yuman-Hernandez had failed to present any evidence to support his claim and had therefore failed to carry his burden. The court then noted a lack of evidence that the government engaged in outrageous conduct where the special agent provided numerous opportunities to withdraw, and that

Yuman-Hernandez had not only failed to withdraw, but went so far as to recruit others and help retrieve marijuana that was traded for a rifle. Accordingly, the district court rejected the entrapment argument and declined to impose a sentence below the statutory mandatory minimum.

## II. DISCUSSION

We review for abuse of discretion the district court's decision to reject Yuman-Hernandez's sentencing entrapment argument. *See United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009); *United States v. Lopez*, 106 F.3d 309, 311 (9th Cir. 1997). The defendant asserts that analysis of whether a mandatory minimum applies is reviewed de novo, *United States v. Castaneda*, 94 F.3d 592, 594 (9th Cir. 1996), but that standard applies only where this court reviews a district court's analysis of whether it has the authority to depart, *United States v. Vilchez*, 967 F.2d 1351, 1353 (9th Cir. 1992) (authority to depart from mandatory minimum "involves questions of statutory construction and constitutional law"). Yuman-Hernandez does not argue that the district court improperly construed its authority, but that the facts mandate a departure from the mandatory minimum. The defendant bears the burden of establishing sentencing entrapment by a preponderance of the evidence. *Mejia*, 559 F.3d at 1118.

Sentencing entrapment occurs where "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994) (quoting *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir. 1991)). The common example in drug cases involves a defendant acting as supplier to an undercover

government agent.  *See, e.g.*, *Staufer*, 38 F.3d at 1104–05; *Mejia*, 559 F.3d at 1115; *see also United States v. Naranjo*, 52 F.3d 245, 246, 249–50 (9th Cir. 1995) (defendant as purchaser).  In this context, we have articulated the defendant's burden as having to show both a lack of intent and lack of capability to supply or purchase more drugs than he or she might otherwise be predisposed to deal.  *See Mejia*, 559 F.3d at 1118; *Naranjo*, 52 F.3d at 250; *Staufer*, 38 F.3d at 1107.

But a case where the defendant is fooled into conspiring and attempting to steal fictitious drugs is a different beast. Fictitious stash house robberies allow "the government [the] virtually unfettered ability to inflate the amount of drugs supposedly in the house and thereby obtain a greater sentence for the defendant . . . [The government] can also minimize the obstacles that a defendant must overcome to obtain the drugs."  *United States v. Briggs*, 623 F.3d 724, 729–30 (9th Cir. 2010).

The capability to sell a certain quantity of drugs has concrete contours: the defendant either can or cannot procure or produce the amount in question.  Similarly, the capability to purchase a given amount often turns on the defendant's financial resources.[1]

---

[1] Though this too is open to manipulation where the government sets a selling price below market value.  *See Staufer*, 38 F.3d at 1107 (quoting amended sentencing guidelines permitting downward departure where government sets price substantially below market value resulting in purchase of significantly greater quantity than available resources would otherwise allow).

On the other hand, the capability to steal a particular quantity of drugs is an amorphous concept. Theoretically, nearly any person is capable of theft. And once a thief gains access to the drugs, he or she is just as capable of carrying off one kilogram as ten. Thus, the quantity of drugs has little relation to capability; in general, the only meaningfully measurable capability is typically the capability to perform the robbery. But the capability to commit the robbery has little relevance to determining a defendant's predisposition to deal in a given quantity of drugs. In the context of theft, the chosen quantity of drugs is divorced from capability, allowing the government to effectively offer an inordinate amount for free. In essence, the government can easily manipulate the capability element in cases of fictitious robbery.[2]

As a result, it makes little sense to require that a defendant establish both a lack of intent and lack of capability in the context of a fictitious stash house robbery. This distinction is supported in *Briggs*, and we make it explicit here. "The ease with which the government can manipulate these factors makes us wary of such operations in general, and inclined to take a hard look to ensure that the proposed stash-house robbery was within the scope of [the defendant's] ambition *and* means." *Briggs*, 623 F.3d at 730 (emphasis added). Not only does *Briggs* phrase the test in a way that allows a defendant to show either a lack of intent or capability in order to meet his or her burden, but that formulation is consistent with the hard look we must give such sting operations. Thus, in the case of fictitious stash house robberies, the defendant need only show a lack of

---

[2] We also note that government control over the level of protection in the stash house similarly opens the intent element to manipulation.

intent *or* lack of capability to deal in the quantity of drugs charged.

We also take this opportunity to clarify that while we have referred to "outrageous" government conduct, *United States v. Schafer*, 625 F.3d 629, 639–40 (9th Cir. 2010), outrageousness is not itself an independent prong of sentencing entrapment. Its origin can be traced to the Eighth Circuit, which described the doctrine of sentencing entrapment as "outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs . . . and the resulting sentence." *United States v. Barth*, 990 F.2d 422, 424 (8th Cir. 1993) (internal quotation marks omitted) (alteration and omission in original); *see Schafer*, 625 F.3d at 639–40 (using "outrageous," citing *United States v. Si*, 343 F.3d 1116, 1128 (9th Cir. 2003), citing *United States v. Davis*, 36 F.3d 1424, 1433 (9th Cir. 1994), citing *Barth*). *Barth* intimated that establishing *either* outrageous conduct or a lack of predisposition might show sentencing entrapment, but it did not require both. 990 F.2d at 425. In *Schafer*, we observed only that we have not found sentencing entrapment unless commission of the greater crime "involve[d] active inducement by government officials." 625 F.3d at 640. While outrageousness and active inducement are helpful concepts in characterizing police activity as reviewable, these concepts add little to the proof of predisposition. A defendant who is not predisposed to commit a more serious crime will usually have done so only because of government inducement,[3] and the act of inducing a defendant to commit

---

[3] One exception might be where a defendant is induced to commit the greater crime by some third party.

a crime he or she is not predisposed to commit is necessarily outrageous.  Thus, we can safely focus on analyzing whether Yuman-Hernandez established a lack of predisposition, through either a lack of intent or lack of capability, and be satisfied that this subsumes the concepts of outrageousness and active inducement in this case.

Here, Yuman-Hernandez takes issue with what he perceives to be a lack of evidence showing an affirmative predisposition to commit a crime involving twenty to twenty-five kilograms of cocaine.  But Yuman-Hernandez ignores the fact that it was his burden to show a lack of predisposition.  The district court's finding was reasonable in light of this burden.

Yuman-Hernandez complains most forcefully that he was not financially capable of purchasing the amount of cocaine at issue.  But his ability to purchase any given amount of cocaine is not relevant.  Instead, the predisposition-capability concerned here is that to conspire with others to take the amount of cocaine involved by force.  His argument fails even if the question is construed as whether he lacked predisposition to *handle* a large amount of cocaine.  He was involved as a member of a stick-up crew; there is no indication he would have been expected to deal or otherwise offload the cocaine by himself after the robbery.  Testimony showed Ramirez intended to sell the cocaine himself and distribute the proceeds—Yuman-Hernandez needed only provide muscle.  While the question of his capability to steal twenty to twenty-five kilograms as opposed to some smaller amount is less enlightening in this context, the cumulative evidence tended to not only rebut any argument that he lacked intent, but in fact show the affirmative existence of intent.  Further, Yuman-Hernandez offered no evidence to suggest

otherwise—a fatal error in light of his burden. Thus, the district court did not abuse its discretion in rejecting the sentencing entrapment argument.

## III. CONCLUSION

Because the capability prong of the predisposition analysis is both less relevant and more easily manipulated in the context of a fictitious stash house robbery, a defendant need only show a lack of intent *or* a lack of capability to establish sentencing entrapment. However, the district court did not abuse its discretion in finding Yuman-Hernandez failed to carry his burden.

**AFFIRMED.**