**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JORGE CORTES,
*Defendant-Appellant*.

No. 12-50137

D.C. No.
3:10-cr-03617-BEN-1

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
June 5, 2013—Pasadena, California

Filed October 9, 2013
Amended March 17, 2014

Before: Sidney R. Thomas, Barry G. Silverman,
and Raymond C. Fisher, Circuit Judges.

Order;
Opinion by Judge Silverman

# SUMMARY[*]

### Criminal Law

The panel amended an Opinion filed October 9, 2013, denied the government's petition for panel rehearing, and granted the defendant's petition for panel rehearing, in a case in which the defendant was arrested in an undercover reverse sting operation.

In the amended opinion, the panel reversed the defendant's convictions for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, conspiracy to affect commerce by robbery and extortion, and possession of a firearm in furtherance of a crime of violence and aiding and abetting, and remanded for a new trial.

The panel held that in instructing the jury on an entrapment defense, the district court erred in its characterization of the holding of *United States v. Spentz*, 635 F.3d 815 (9th Cir. 2011), by eliminating the drugs or any profit from the sale of those drugs as a potential basis for the inducement. The panel explained that the district court should have told the jury that the amount of drugs or the profit that would be derived from their sale cannot on its own establish an inducement supporting entrapment.

The panel held that sentencing entrapment must be tried to a jury where the defendant's argument and the evidence raise the possibility of changing the applicable statutory

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

maximum or minimum sentences. The panel explained that if the defendant presents such evidence in his new trial, he will be entitled to a jury instruction on sentencing entrapment.

The panel suggested instructions for both the entrapment defense and sentencing entrapment.

The panel rejected the defendant's argument that Hobbs Act robbery or extortion is limited to the stealing of lawful property and excludes contraband such as illegal drugs.

**COUNSEL**

Gary P. Burcham (argued), Burcham & Zugman, San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney for the Southern District of California, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and Timothy D. Coughlin (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

**ORDER**

The Opinion filed October 9, 2013, appearing at 732 F.3d 1078, is amended as follows:

1.   At slip op. 4, 732 F.3d at 1082, in the third sentence of the first paragraph, change "Accordingly, we reverse the Count 1 conviction and remand for a retrial" to "Accordingly, we reverse the convictions and remand for a retrial."

2.   At slip op.4, 732 F.3d at 1082, replace the fifth sentence of the first paragraph, which begins "We also affirm the Hobbs Act conviction. . . ." with "We also reject Cortes's argument that Hobbs Act robbery or extortion is limited to the stealing of lawful property and excludes contraband such as illegal drugs."

3.   At slip op. 15, 732 F.3d at 1087, change "Accordingly, we REVERSE and REMAND for a retrial on Count 1." to "Accordingly, we REVERSE and REMAND for a retrial."

4.   At slip op. 24, 732 F.3d at 1091, in first paragraph, replace "We express no judgment as to whether. . . ." with "We express no opinion on whether . . . ."

5.   At slip op. 24–25, 732 F.3d at 1092, in carryover sentence, replace ". . . .to steal the *charged* quantity of the controlled substance, which is at least 5 kilograms." with ". . . .to steal the quantity of drugs charged in this case, which is at least 5 kilograms."

6.   At slip op. 25–26, 732 F.3d at 1092, insert between header and first paragraph: "Cortes argues that Count Two

should have been dismissed because, he argues, the Hobbs Act does not extend to contraband. Although we reverse and remand for retrial due to the instructional issue discussed above, we consider Cortes's Hobbs Act argument that his pretrial motion to dismiss this count should have been granted."

7.   At slip op. 28, 732 F.3d at 1093, below "4. Attempted Impeachment of the Confidential Informant," replace "We need not review this evidentiary ruling because we are remanding for a new trial on Count 1." with "We need not review this evidentiary ruling because we are remanding for a new trial."

8.   At slip op. 28–29, 732 F.3d at 1093, below "5. Sentencing," replace "Because we are vacating his conviction . . .his 20-year sentence is moot at this juncture." with "Because we are vacating his conviction and sentence, and remanding for a retrial, Cortes's appeal of his sentence is moot at this juncture."

9.   At slip op. 29, 732 F.3d at 1093, replace "We REVERSE and REMAND for a new trial on Count 1. The balance of the judgment is AFFIRMED." with " We REVERSE and REMAND for a new trial."

With these amendments, Appellee United States Of America's petition for panel rehearing (Doc. No. 43) is DENIED and appellant Jorge Cortes's petition for panel rehearing (Doc. No. 44) is GRANTED.  No further petitions for rehearing will be entertained in this case.

   **IT IS SO ORDERED.**

## OPINION

SILVERMAN, Circuit Judge:

Defendant-Appellant Jorge Cortes was arrested in an undercover reverse sting operation executed by the Bureau of Alcohol, Tobacco, Firearms and Explosives. ATF agents fabricated a scheme to steal 100 kilograms of cocaine from a stash house and arrested the conspirators before the home invasion occurred. Cortes was ultimately convicted of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), conspiracy to affect commerce by robbery and extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 2), and possession of a firearm in furtherance of a crime of violence and aiding and abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2 (Count 3).

On appeal, Cortes argues that the district court erred in modifying the entrapment defense instruction to reflect the holding of *United States v. Spentz*, 653 F.3d 815, 818–20 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1600 (2012), refusing to instruct the jury on sentencing entrapment, denying Cortes the opportunity to impeach the confidential informant's credibility, denying a motion to dismiss the Hobbs Act charge, and sentencing him to an allegedly unreasonable total of 240 months. We hold today that the district court erred in its characterization of the *Spentz* holding. Accordingly, we reverse the convictions and remand for a retrial. We further hold that under certain circumstances a sentencing entrapment instruction must be given to the jury and offer suggested entrapment and sentencing entrapment instructions that we believe will provide greater clarity on these exceedingly subtle points of law. We also reject Cortes's

argument that Hobbs Act robbery or extortion is limited to the stealing of lawful property and excludes contraband such as illegal drugs. We do not reach the remaining challenges, which are moot in light of the remand.

## I. Background

On August 23, 2010, undercover ATF Special Agent Richard Zayas met up with a confidential informant who introduced him to an individual known as "the juvenile" or alternatively as "Abel." Zayas told the juvenile that he was a "disgruntled courier of six to seven kilograms of cocaine for an organization." And he informed the juvenile that he would soon be collecting the drugs from a stash house that contained approximately 100 kilograms of cocaine and was guarded by two individuals, one of whom would be armed. Zayas explained at trial that the drug quantity used in the story was selected based on the region of operation to enhance the plausibility of the scheme: "It's more likely a hundred kilograms of cocaine wouldn't be in a stash house in a small town in Iowa as opposed to San Diego." According to Zayas, ATF targeted the juvenile because the confidential informant led them to believe that the juvenile "was involved with individuals involved in this type of crime." The juvenile informed Zayas that he had an associate with a crew who could pull off the robbery and had done jobs like this before.

Zayas met that associate, Cortes, the following day, August 24, 2010. He reiterated the details of the stash house, including the quantity of drugs inside, underscoring that the house would only contain drugs, not money. Cortes announced that the drugs would be split half and half between Zayas and his group. Zayas told Cortes that he was motivated

to steal the cocaine, because he believed his boss was not paying him enough and had been sleeping with his wife.

The next day, Zayas met up with Cortes and other individuals who had been assembled for the job. There were ten people present, plus the confidential informant. Cortes described the plan and introduced Zayas to the other individuals, so they would know not to hurt him during the robbery. Cortes instructed Zayas not to speak to the crew members. Zayas nevertheless informed them that the house contained 100 kilograms of cocaine, and Cortes scolded him for speaking to the rest of the crew against his wishes. They drove to and assembled in a garage, the staging area for the robbery. Zayas pretended to receive a call from the stash house, at which point a tactical team created a distraction using flash-bangs and arrested the entire crew, including Cortes.

At trial, Cortes testified that he attended the meeting on August 24, 2010, simply because he wanted to help the juvenile, and that he was not in desperate need of money. He testified that he was also motivated to participate because of Zayas's story about his wife's infidelity. Cortes says he was sympathetic to that tale of woe because the same had happened to him a few months back. He, however, denied that any dire financial straits had driven him to participate in the heist. Additionally, he maintained that he did not have a crew, had no experience with home invasions, and had basically lied for the sake of helping his friend, the juvenile.

Cortes filed a motion to dismiss the Hobbs Act count, arguing that it did not apply to the robbery or extortion of contraband; the motion was denied. He also filed motions *in limine* to secure entrapment and sentencing entrapment

instructions. The court appears to have concluded that sentencing entrapment would simply be subsumed within any entrapment instruction and deferred ruling on whether that instruction should be given. Ultimately, the court gave the model entrapment instruction (Ninth Circuit Criminal Jury Instruction 6.2), which it modified to reflect the then-new holding of *United States v. Spentz*, 653 F.3d 815, 818–20 (9th Cir. 2011). In *Spentz*, which concerned a similar drug stash house robbery sting, we said that the defendants could not merely point to the typical fruits of their crime to establish governmental inducement: "The drugs and money they would recover from the robbery were not an alternative, non-criminal motivation; they were the prototypical criminal motivation for robbery." *Id*. at 819. The instruction in this case ultimately read as follows:

> Now Defendant Jorge Cortes contends that he was entrapped by a government agent. The government has the burden of proving beyond a reasonable doubt that the Defendant Jorge Cortes was not entrapped. The government must prove either, one, that the Defendant Jorge Cortes was predisposed to commit the crime before being contacted by a government agency; or two, that Defendant Jorge Cortes was not induced by the government agents to commit the crime.
>
> When a person independent of and before government contact is predisposed to commit the crime, it is not entrapment, even if government agents merely provide an opportunity to commit the crime.

In determining whether the defendant was predisposed to commit the crime before being approached by government agents, you may consider the following: one, whether the defendant demonstrated reluctance to commit the offense; two, the defendant's character and reputation; three, whether the government agents initially suggested the criminal activity; four, whether the defendant engaged in the criminal activity for profit; and five, the nature of the government's inducement or persuasion. *However, the amount of drugs or the profit that would be derived from their sale does not constitute an inducement supporting entrapment.*

In determining whether Defendant Jorge Cortes was induced by government agents to commit the offense, you may consider any government conduct creating a substantial risk that an otherwise innocent person would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassments, promise of reward or pleas based on need, sympathy, or friendship.

The italicized sentence above (emphasis added by us) is the modification derived from *Spentz*.

The jury returned a guilty verdict on all three counts. Cortes was sentenced to 180 months for Count 1, a concurrent term of 60 months for Count 2, and a consecutive term of 60 months for Count 3, for a total of 240 months.

Judgment was entered on May 19, 2012, and Cortes timely appealed.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. In reviewing jury instructions, "the standard of review varies based on the nature of the alleged error." *United States v. Keyser*, 704 F.3d 631, 641 (9th Cir. 2012). We review the language and formulation of a jury instruction for an abuse of discretion. *United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1477 (2013). However, "[w]hen jury instructions are challenged as misstatements of law, we review them *de novo*." *United States v. Gonzalez-Torres*, 309 F.3d 594, 600 (9th Cir. 2002).

"A criminal defendant is entitled to jury instructions related to a defense theory so long as there is 'any foundation in the evidence'" and the instruction is "supported by law." *United States v. Doe*, 705 F.3d 1134, 1144 (9th Cir. 2013) (quoting *United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005)). "When there is a 'question whether the district court's instructions adequately presented the defendant's theory of the case,' the 'district court's denial of a proposed jury instruction' is reviewed de novo." *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009) (citation omitted); *see also United States v. Chao Fan Xu*, 706 F.3d 965, 988 (9th Cir. 2013) ("Whether the instructions, taken as a whole, adequately cover the defense theory is a question of law reviewed *de novo*."); *United States v. Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010) ("We review de novo the denial of a jury instruction based on a question of law."). "The denial of a defendant's jury instruction due to an

inadequate factual basis is reviewed for an abuse of discretion." *Chao Fan Xu*, 703 F.3d at 988.

"An error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Pierre*, 254 F.3d 872, 877 (9th Cir. 2001) (citation, quotation marks, and alteration omitted). Where the error is the wholesale failure to give an instruction, we must reverse if the evidence supports giving the instruction: "[a] criminal defendant is entitled to jury instructions related to a defense theory so long as there is 'any foundation in the evidence.'" *Doe*, 705 F.3d at 1144 (quoting *Burt*, 410 F.3d at 1103); *see also United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987) ("[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility.").

We review the denial of a motion to dismiss an indictment de novo. *United States v. Haynes*, 216 F.3d 789, 796 (9th Cir. 2000).

Finally, while we review the substantive reasonableness of a sentence for abuse of discretion, *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), we review a sentence de novo for any claimed Eighth Amendment violation, *United States v. Meiners*, 485 F.3d 1211, 1212 (9th Cir. 2007) (per curiam).

## III.    Discussion

### 1.    Entrapment

Cortes first argues that the district court erred by modifying the Ninth Circuit Pattern Jury Instruction on entrapment to add the language inspired by *Spentz*.

"The entrapment defense has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *Spentz*, 653 F.3d at 818 (citations and quotation marks omitted).  "Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (citation and quotation marks omitted).  "An inducement consists of an opportunity *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Poehlman*, 217 F.3d 692, 701 (9th Cir. 2000) (citation and quotation marks omitted).

As to the second requirement, the defense of entrapment fails "[i]f the defendant is predisposed to commit the crime." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986). We have identified five factors to determine whether a defendant was predisposed:

> [T]he character or reputation of the defendant, including any prior criminal record; whether

the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Busby*, 780 F.2d 804, 807 (9th Cir. 1986) (citation omitted). "Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important." *Id*.

Here, the court granted Cortes's request to instruct the jury on the entrapment defense. However, the court modified the model Ninth Circuit instruction to eliminate the drugs or any profit from the sale of those drugs as a potential basis for the inducement. In 2011, we said in *Spentz* that defendants could not rely on the "potentially large reward" as governmental inducement to commit a robbery, because that was "the product of the crime they agreed to commit." 653 F.3d at 819. "The drugs and money they would recover from the robbery were not an alternative, non-criminal motivation; they were the prototypical criminal motivation for robbery." *Id*. To comply with *Spentz*, the district court instructed the jury that "the amount of drugs or the profit that would be derived from their sale does not constitute an inducement supporting entrapment."

Cortes argues *Spentz* contradicts our prior cases that *did* allow an entrapment instruction to go to the jury even when

the purported inducement to commit the crime was a pecuniary reward. In *United States v. Kessee*, 992 F.2d 1001 (9th Cir. 1993), we held that the district court should have given an entrapment instruction where the defendant faced "repeated suggestions" by the undercover informant to sell drugs and only caved after he "lost both his jobs, and did not know where he would get the money for rent and food for his family." *Id*. at 1003–04. *Kessee* concerns what is minimally necessary to require giving an entrapment instruction to the jury, while *Spentz* concerns what the jury may *not* find constitutes entrapment. They are distinguishable. In *Spentz*, "the only evidence of inducement that defendants offer[ed] [was] the size of the potential pay-out from the robbery," *i.e.* the typical fruits of a robbery, without any additional motivation or evidence of inducement. 653 F.3d at 820. In *Kessee*, the defendant presented such additional evidence, including repeated government entreaties to sell drugs and the defendant's dire financial straits. 992 F.2d at 1003–04.

In *United States v. Sotelo-Murillo*, 887 F.2d 176 (9th Cir. 1989), where we reversed the district court and required an entrapment instruction be given, the defendant, a prospective cocaine buyer, offered to negotiate the sale of heroin to undercover DEA informants. *Id*. at 177–78. He arranged the delivery of heroin to undercover DEA agents and was arrested and convicted for distribution. *Id*. At trial, the defendant argued the DEA's undercover informant, Correa, entrapped him, and he was induced to commit the crime in an attempt to recoup money he had previously loaned Correa. *Id*. at 178. According to Sotelo, Correa had strung him along, promising him that he was working a variety of jobs in order to pay him back. *Id*. The government's informant engaged

in repeated entreaties, *id*. at 180–81, and, according to the defendant, finally overcame his resistance:

> Sotelo also contends that Correa later approached him with the story that he had some friends who were big Colombian sellers. Correa allegedly asked Sotelo to pose as a purchaser of drugs. Sotelo testified that he initially refused, but ultimately relented when informed that it was the only way to get his money back.

*Id*. at 178. Sotelo claimed that Correa wanted to stage a fake drug transaction so he could pocket a $25,000 advance commission and use that to repay him. *Id*. at 180. Granted, the alleged motivation was to profit from the drug transaction, but other factors distinguish this from *Spentz*, including: (1) repeated pressure by a government agent or informant that overcame alleged resistance; (2) a series of proposals made by the informant; and (3) a non-criminal motivation of reimbursement, such that the typical criminal motivation (obtaining the drugs) was not the sole basis for the claimed impermissible inducement. We concluded that the jury could have reasonably found the government had "tak[en] advantage of an alternative, non-criminal type of motive." *Poehlman*, 217 F.3d at 701 (citation and quotation marks omitted). In this way, *Spentz* can be reconciled with prior precedent.

Where does this leave us? A defendant arguing entrapment must put forward evidence of inducement that is above and beyond ordinary criminal motivation. An entrapment instruction may remind the jury that it cannot rest a finding of inducement *solely* on the hope of reaping the

typical fruits of the crime. That is the teaching of *Spentz*. However, evidence of inducement can include government pressure or persuasion in whatever form it takes. This is our longstanding entrapment law. *See Williams*, 547 F.3d at 1197; *Busby*, 780 F.2d at 807.

We do not envy the district court's task here. Our decisions in this area have not been a model of clarity. In principle, a *Spentz* instruction was proper, but the actual phrasing erred in stating the holding. Again, the district court instructed the jury that "the amount of drugs or the profit that would be derived from their sale does not constitute an inducement supporting entrapment." This language slightly overstated *Spentz*'s holding. Instead, the court should have told the jury that the amount of drugs or the profit that would be derived from their sale *cannot on its own establish* an inducement supporting entrapment. We believe the instruction can be further clarified and offer the following guidance on how to communicate this exceedingly subtle point of law to the jury. We suggest supplementing the model entrapment instruction roughly along the following lines:

> It is not entrapment if a person is tempted into committing a crime *solely* on the hope of obtaining ill-gotten gain; that is often the motive to commit a crime. However, in deciding whether a law enforcement officer *induced* the defendant to commit the crime, the jury may consider all of the factors that shed light on how the officers supposedly

persuaded or pressured the defendant to commit the crime.[1]

Accordingly, we **REVERSE and REMAND** for a retrial.

## 2. Sentencing Entrapment

Cortes next argues that the district court erred in refusing to instruct the jury on sentencing entrapment, which is a separate affirmative defense to the quantity element of the drug charge under 21 U.S.C. § 841. "Sentencing entrapment occurs where 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.'" *United States v. Briggs*, 623 F.3d 724, 729 (9th Cir. 2010) (quoting *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994)). "[I]t is impermissible for the government to 'structure sting operations in such a way as to maximize the sentences imposed on defendants' without regard for the defendant's culpability or ability to commit the crime on his own." *United States v. Schafer*, 625 F.3d 629, 640 (9th Cir. 2010) (quoting *Staufer*, 38 F.3d at 1107). "[A]ctive government involvement" or undue government pressure is required to

---

[1] As this suggested instruction makes clear, we do not believe that *Spentz* excludes from consideration the proceeds of a crime. Cortes, however, appears to argue that the district court's *Spentz*-modified entrapment instruction violated the Due Process Clause. We review this vague contention for plain error because it was raised for the first time on appeal. *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). We will affirm unless "(1) there has been an error in the proceedings below; (2) that error was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. There was no plain due process error. *United States v. Olano*, 507 U.S. 725, 734 (1993).

establish this defense. *Id*. "In those cases where sentencing entrapment occurs, the amount of drugs used in calculating the defendant's sentence should be reduced by the amount that 'flow[s] from [the] entrapment.'" *Briggs*, 623 F.3d at 729 (quoting *United States v. Naranjo*, 52 F.3d 245, 250 (9th Cir. 1995)).

We have never held that sentencing entrapment is a jury question, but the Supreme Court's precedent and our own make clear that it must be. *See United States v. Williams*, 478 F. App'x 364, 366 (9th Cir. 2012) (Silverman, J., dissenting). "[W]e have held that drug types and quantities triggering higher statutory maximum sentences under 21 U.S.C. § 841(b) are jury questions under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000)." *Id*. (citing *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc)). It therefore stands to reason that any *defenses* to those drug types and quantities must be submitted to the jury as well, when the proffered defense has the potential to change the statutory maximum or minimum sentences.

The origins of sentencing entrapment lie in cases that pre-date *Apprendi*, and that explains why it was typically addressed during sentencing. In *Staufer*, we wrote that "[s]entencing entrapment or 'sentence factor manipulation' occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.'" 38 F.3d at 1106 (quoting *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir. 1991)). Following *Apprendi*, however, "sentencing entrapment" is a bit of a misnomer, since the drug quantity is an element of the offense, not a sentencing enhancement or factor. A jury must decide whether the defendant would have

sold, bought, or robbed that quantity but for the government manipulation or pressure.**[2]**

The Sentencing Guidelines contain guidance for the judge on "sentencing entrapment" but these instructions come into play only insofar as the Guidelines calculations are concerned, not as to substantive statutory elements that must be tried to a jury or in a bench trial. In drug offense cases under 21 U.S.C. § 841, the drug quantity is an element of the offense that must be tried to the jury, but if the jury rejects the sentencing entrapment defense, the now-advisory Guidelines will nevertheless allow the court in its discretion to factor in governmental manipulation in its calculation of the applicable sentencing range. Application Note 12 to United States Sentencing Guidelines Manual (2011) § 2D1.1 addresses governmental manipulation of the *quantity* of drugs involved in a reverse sting operation in which the defendant is either the seller or buyer:

> If . . . the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that

---

**[2]** The government argues that *United States v. Carranza*, 289 F.3d 634 (9th Cir. 2002), stands for the proposition that sentencing entrapment is not an affirmative defense that must be submitted to the jury, but that case is wholly inapposite. *Carranza* merely held that the prosecution does not have to prove that the defendant *knew* of the type and quantity of the controlled substance and noted that *Apprendi* did not change that longstanding rule. *Id*. at 643–44.

the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing.

Along similar lines, Application Note 14 to United States Sentencing Guidelines Manual (2011) § 2D1.1 addresses governmental manipulation of the *price* of the drugs involved in a reverse sting operation in which the defendant is the buyer:

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

In this case, Cortes proposed the following sentencing entrapment instructions that tracked Application Notes 12 and 14:

> If the government fails to prove beyond a reasonable doubt that Mr. Cortes was reasonably capable of purchasing 5 or more kilograms of cocaine, then you cannot return a finding that the applicable quantity of cocaine . . . was 5 or more kilograms.

> If you find that the government agents set a
> price for the controlled substance that was
> substantially below the market value of the
> controlled substance, thereby leading to Mr.
> Cortes' agreement to acquire 5 or more
> kilograms of cocaine when his available
> resources would not have allowed him to
> purchase 5 or more kilograms of cocaine
> except for the artificially low price set by the
> government agents, then you cannot return a
> finding that the applicable quantity of cocaine
> . . . was 5 or more kilograms.

However, these proposed instructions were clearly inapposite: Cortes was not accused of purchasing drugs but of conspiring to *steal* drugs.

The court denied Cortes's request for a sentencing entrapment instruction. Confronted with the novel application of this defense in the context of a fictitious drug stash house reverse sting, the court did not yet have the benefit of *United States v. Yuman-Hernandez*, 712 F.3d 471 (9th Cir. 2013), which was decided over a year after Cortes's trial. While the run-of-the-mill drug sting ensnares a defendant who is selling or buying, in *Yuman-Hernandez* we noted that sentencing entrapment *is* cognizable in a reverse sting operation involving a drug stash house robbery. *Id*. at 474–75. *Yuman-Hernandez* did not address whether *Apprendi* requires sentencing entrapment be given to the jury, but we wrote that sentencing entrapment in this context forces the factfinder to ask whether the defendant had "the capability to steal a particular quantity of drugs," an admittedly "amorphous concept." *Id*. at 474. Writing for the panel, Judge Goodwin explained as follows:

Theoretically, nearly any person is capable of theft. And once a thief gains access to the drugs, he or she is just as capable of carrying off one kilogram as ten. Thus, the quantity of drugs has little relation to capability; in general, the only meaningfully measurable capability is typically the capability to perform the robbery. But the capability to commit the robbery has little relevance to determining a defendant's predisposition to deal in a given quantity of drugs. In the context of theft, the chosen quantity of drugs is divorced from capability, allowing the government to effectively offer an inordinate amount for free. In essence, the government can easily manipulate the capability element in cases of fictitious robbery.

As a result, it makes little sense to require that a defendant establish both a lack of intent and lack of capability in the context of a fictitious stash house robbery. . . . Thus, in the case of fictitious stash house robberies, the defendant need only show a lack of intent *or* lack of capability to deal in the quantity of drugs charged.

*Id*. at 474–75 (footnote omitted). Not only does sentencing entrapment provide a defendant with a partial defense when the complete defense of entrapment fails, but the test is satisfied in the fictitious stash house context with either a lack of capability *or* a lack of intent. In the wake of *Yuman-Hernandez*, we now know that when sentencing entrapment is raised in this context, a proper instruction will ask the jury

to decide whether the defendant had the capability *and* the intent to deal in that fabricated quantity of drugs.[3]

A criminal defendant is entitled to present his sentencing entrapment defense to the jury if the success of that defense would result in a lower statutory sentencing range. That is, if there is some foundation in the evidence that he would be subject to a lesser statutory minimum or maximum sentence if his sentencing entrapment defense were to succeed, then he is entitled to a jury instruction on that defense. The statutory range for the charged offense in this case, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, is 10 years to life imprisonment. 21 U.S.C. § 841(b)(1)(A). The middle quantity range, from 500 grams to just shy of 5 kilograms of cocaine, exposes a defendant to a mandatory minimum of 5 years and a statutory maximum of 40 years. *Id*. § 841(b)(1)(B). Finally, an unspecified amount of cocaine bears no mandatory minimum and exposes a defendant to a 20-year statutory maximum. *Id*. § 841(b)(1)(C).

Cortes was convicted of 21 U.S.C. § 841(b)(1)(A) and therefore faced a 10-year mandatory minimum and a statutory maximum of life. Had the jury considered Cortes's sentencing entrapment defense and found that he was entrapped as to the amount, the maximum sentence could have dropped to 40 years or 20 years, depending on the jury's finding, and crucially the mandatory minimum could have

---

[3] We note that a market-value sentencing entrapment instruction based on Application Note 14 above likely would not make much sense here since this was not a drug transaction but a conspiracy to take the drugs by force. There is no evidence that Zayas or anyone else informed Cortes of the price or value of the cocaine.

dropped to 5 years or none whatsoever. Cortes was ultimately sentenced to 180 months or 15 years, less than the 20-year statutory maximum for an unspecified amount of cocaine. However, the refusal to instruct on sentencing entrapment may have been prejudicial had the jury agreed he was entrapped as to the quantity, because the court might have had to apply a lower mandatory minimum or none at all, depending on the quantity the jury found to have been improperly inflated. On June 17, 2013, in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which declined to extend *Apprendi* to mandatory minimum sentences. The Court stated:

> *Apprendi*'s definition of "elements" necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. 530 U.S., at 483, n. 10; *Harris*, *supra*, at 579 (Thomas, J., dissenting). Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.

*Alleyne*, 133 S. Ct. at 2158. Accordingly, we hold that sentencing entrapment must be tried to a jury where the defendant's argument and the evidence raise the possibility of changing the applicable statutory maximum or minimum sentences.

The record demonstrates that Cortes introduced evidence supporting a sentencing entrapment *defense* under the standard for reverse stings involving a drug stash house robbery scheme. Under *Yuman-Hernandez*, he need only establish either "a lack of intent *or* lack of capability to deal in the quantity of drugs charged." 712 F.3d at 475. Additionally, under *Briggs*, the sentencing entrapment defense can also succeed if he shows the government "inflate[d] the amount of drugs supposedly in the house" in order to "obtain a greater sentence for the defendant." 623 F.3d at 729. At trial, Agent Zayas testified that the 100 kilogram amount was selected to make the set-up believable for the geographic area in which the reverse sting was to occur, not to ratchet up the defendants' sentencing exposure. The factfinder could discredit that testimony and conclude that the drug quantity was set at an "arbitrarily high level" in order to maximize punishment.

However, the sentencing entrapment defense needs to be presented to the *jury* only if that reduction would affect Cortes's mandatory minimum or statutory maximum sentence. *See Alleyne*, 133 S. Ct. at 2155; *Apprendi*, 530 U.S. at 489. Therefore, there must be evidence from which the jury could find that Cortes lacked the intent or capability to deal even in *5 kilograms* – the amount charged in the indictment – or that the government inflated the amount of drugs to 100 kilograms to trigger the statutory minimum or maximum. *See* 21 U.S.C. § 841(b)(1)(A)(ii). If Cortes presents such evidence in his new trial, he will be entitled to a jury instruction on sentencing entrapment.[4] We express no

---

[4] If no such evidence is presented, Cortes's sentencing entrapment defense will be cognizable only during sentencing. Notably, Cortes did argue below that his Sentencing Guidelines range should be reduced based

opinion on whether Cortes's defense will prevail on these grounds, only that he may be entitled to the jury instruction.

Because the court may have to give a sentencing entrapment instruction next time around, separate from the entrapment instruction, we offer the following as a suggested instruction for this particular drug stash house robbery context:

> Defendant Jorge Cortes also argues that he was specifically entrapped as to the *quantity of the drugs* involved in the staged robbery. This is a separate and distinct defense from the entrapment defense I have just described to you and you *must* reach this question if you reject Defendant Cortes's entrapment defense. You must decide whether Defendant Cortes had *both* the intent *and* the capability to steal the quantity of drugs charged in this case, which is at least 5 kilograms. You must also decide whether the government inflated the quantity of drugs to make Cortes's punishment more severe. Finally, if you find that Defendant Cortes was specifically entrapped as to the quantity of drugs involved, you must decide what quantity was *not* a result of that entrapment.

---

on sentencing entrapment by the government. Although the district court credited Agent Zayas's explanation for why selecting 100 kilograms was appropriate, it also observed that "for purposes of sentencing, it seems to me like it's a little high." The district court therefore gave Cortes a variant sentence, although it did not recalculate his Guidelines based on a reduced drug quantity.

You will be asked to answer the following questions:

(1) Did Defendant Cortes lack the intent to steal that *quantity* of the controlled substance? If yes, what *quantity* did he have the intent to steal?

(2) Did Defendant Cortes lack the capability to steal that *quantity* of the controlled substance? If yes, what *quantity* did he have the capability to steal?

(3) Did the government's agents inflate the quantity of drugs in the scheme to make Defendant Cortes's punishment more severe? If yes, what *quantity* was not inflated?

If the jury answers any of those three questions in the affirmative, the district court shall sentence the defendant under the appropriate statutory provision for the quantity the jury found did not stem from sentencing entrapment.

### 3. Hobbs Act

Cortes argues that Count Two should have been dismissed because, he argues, the Hobbs Act does not extend to contraband. Although we reverse and remand for retrial due to the instructional issue discussed above, we consider Cortes's Hobbs Act argument that his pre-trial motion to dismiss this count should have been granted.

We reject Cortes's argument that Hobbs Act robbery or extortion is limited to the stealing of lawful property and

excludes contraband such as illegal drugs. Nothing in 18 U.S.C. § 1951(a) so limits the scope of this statute; nor does anything in the definitions of "robbery," *id*. § 1951(b)(1), or "extortion," *id*. § 1951(b)(2). The Supreme Court has stated Congress intended the Hobbs Act to be broadly construed. *See United States v. Culbert*, 435 U.S. 371, 380 (1978) ("Our examination of the statutory language and the legislative history of the Hobbs Act impels us to the conclusion that Congress intended to make criminal all conduct within the reach of the statutory language."); *see also United States v. Lynch*, 437 F.3d 902, 908 (9th Cir. 2006) (en banc) (noting "the very broad scope of the Hobbs Act"). It covers illegal activities that "in any way or degree" affect "any article or commodity" that travels in commerce. 18 U.S.C. § 1951(a). We agree with the Second Circuit, which in *United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006), deemed "untenable" the proposition that "one can never 'extort,' under the Hobbs Act, illegal property (such as narcotics) because such property cannot be legally used, sold, or transferred." *Id*. at 325–26. And a number of cases have already established that interference with illegal interstate commerce fulfills the interstate nexus requirement of the Hobbs Act. *Lynch*, 367 F.3d at 1156–57 (citing additional cases).

Congress modeled the Hobbs Act after the New York Penal Code and the Field Code, a 19th Century model penal code. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 (2003). Contrary to Cortes's argument, New York law recognized that robbery included the taking of contraband and *McCord v. People*, 46 N.Y. 470 (1871) (per curiam), does not stand for a contrary proposition. In *McCord*, a police detective was convicted of obtaining money under false pretenses after falsely telling a man that he had a warrant for

his arrest, which prompted the man to give him a gold watch and diamond ring. *Id*. at 471. The court reversed the conviction, reasoning that the law was not meant "to protect those who, for unworthy or illegal purposes, part with their goods." *Id*. at 472–73 (citation omitted).

But this rule applied only to larceny by false pretenses, not to robbery. New York's highest court later recognized that "the rule as to larceny by false pretense and by trick or device" announced in *McCord* differed from "the common-law rule that stealing property from a thief is the same as stealing from the true owner." *People v. Tompkins*, 79 N.E. 326, 327 (N.Y. 1906) (citation omitted). Indeed, in defining "personal property" under the larceny statutes, the Field Code cited to, *inter alia*, *Commonwealth v. Rourke*, 64 Mass. 397 (1852), which held that money acquired by the illegal sale of liquor may be the subject of larceny. 4 Commissioners of the Code, Proposed Penal Code of the State of New York § 584 (1865) (reprint 1998).

Other state laws were in accord. Though the California Supreme Court once held that the robbery of liquor during Prohibition was not punishable, *People v. Spencer*, 201 P. 130, 131 (Cal. 1921), that decision was overruled less than nine years later, *People v. Odenwald*, 285 P. 406, 407 (Cal. Ct. App.), *cert. denied*, 286 P. 161 (Cal. 1930), and well before the Hobbs Act was enacted in 1946. The California Supreme Court recognized that California had been "the only jurisdiction" to adhere to the rule that robbery of contraband was not subject to penal sanction, and since *Spencer*'s overruling, "the rule is universal that by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals." *People v. Dillon*, 668 P.2d 697, 704 n.5 (Cal. 1983)

(concerning robbery of marijuana); *People v. Otis*, 139 N.E. 562, 562 (N.Y. 1923) (rejecting the position that the theft of contraband cannot constitute larceny).

Moreover, Congress's enactment of a statute, 18 U.S.C. § 2118, prohibiting the robbery of controlled substances does not, as Cortes argues, reflect "Congress' intent to protect only individuals who lawfully possess controlled substances." The legislative history indicates § 2118 was enacted, at least in part, to address concerns that the Department of Justice was not prosecuting robberies of pharmacists under the Hobbs Act. H. Rep. No. 98-644, at 2-4 (1984). Nothing about its passage suggests Congress intended to shield people who robbed illegal narcotics dealers from punishment under the Hobbs Act.

Accordingly, we hold that the Hobbs Act criminalizes robbery and extortion even when the property at issue is contraband.

### 4. Attempted Impeachment of the Confidential Informant

We need not review this evidentiary ruling because we are remanding for a new trial.

### 5. Sentencing

Finally, Cortes claims his 20-year combined sentence is substantively unreasonable and violates the Eighth Amendment. Because we are vacating his conviction and sentence, and remanding for a retrial, Cortes's appeal of his sentence is moot at this juncture.

## IV. Conclusion

We **REVERSE and REMAND** for a new trial.