[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12117
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00308-EAK-TGW-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR OSBALDO RODRIGUEZ, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 8, 2019)

Before ROSENBAUM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Cesar Rodriguez, Jr., appeals his 180-month sentence after pleading guilty to several drug-trafficking offenses.  On appeal, Rodriguez argues that the district court erred by applying a sentencing enhancement under U.S.S.G. § 2D1.1(b)(15)(C) (2016), because the government failed to prove that he was "directly involved" in the importation of the drugs.  We conclude that the record is insufficient to permit meaningful review, so we remand for the district court to clarify its sentencing decisions.

## I.

Rodriguez pled guilty to conspiracy to possess and possession with intent to distribute heroin and cocaine.[1]  During the plea colloquy, he admitted to selling heroin to confidential sources on seven occasions in 2015.  One of the sales also included cocaine.  A search warrant executed at his home revealed additional quantities of heroin and more than $60,000 in cash.

The presentence investigation report ("PSR")—after multiple revisions—calculated a guideline imprisonment range of 210 to 262 months based on a total offense level of 34 and a criminal history category of IV.  In calculating the offense level, the PSR applied § 2D1.1(b)(15)(C) (2016)[2], which provides for a two-level

---

[1] Rodriguez pled guilty, without a written plea agreement, to one count of conspiracy to possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846; seven counts of possession with intent to distribute heroin, in violation of § 841(a)(1); and one count of possession with intent to distribute heroin and cocaine, in violation of § 841(a)(1).

[2] This same provision now appears under U.S.S.G. § 2D1.1(b)(16)(C).

increase if the defendant both receives an aggravating-role adjustment under § 3B1.1 and "was directly involved in the importation of a controlled substance." The PSR stated that this enhancement applied because "[t]he defendant was a manager and supervisor within the conspiracy, and the case involved heroin imported from Mexico."

Rodriguez contested this enhancement in objections to the PSR, two sentencing memoranda, and arguments at sentencing. He maintained that he was not personally involved in the importation of heroin and that it was not enough that the offense involved heroin imported from Mexico.

At Rodriguez's sentencing, which occurred over two days in April and May of 2018, the government called two case agents from the Federal Bureau of Investigation ("FBI") to testify. Their testimony, along with facts from the PSR that are undisputed or no longer at issue, established the following.

Rodriguez managed a heroin-trafficking organization based in Tampa, Florida, employing multiple "street-level dealers" to sell heroin for him. Some of the heroin Rodriguez distributed was imported from Mexico. This heroin was supplied by Jose Angel Cerrillo, who had connections to the Mexican drug cartel that trafficked the heroin. The FBI determined that the heroin was being imported near Brownsville, Texas, where Cerrillo lived. Cerrillo transported the heroin from Brownsville to Tampa—either personally or through other couriers—using the

3

public bus system. Despite Cerrillo's connections to the cartel, Rodriguez's organization was not part of the cartel.

In mid-July 2015, the FBI intercepted a phone call between Cerillo and Rodriguez in which Cerrillo stated that he was bringing 2.5 kilograms of heroin to Tampa for Rodriguez, who was then in Puerto Rico. On the date of Cerrillo's scheduled arrival, law enforcement went to the bus terminal in Tampa and made contact with Cerrillo and Maria Zacharias, a courier coconspirator who, according to the PSR, "dealt directly with the suppliers in Mexico." No drugs were found on Cerrillo, but he was arrested on an outstanding warrant and taken to jail. At the jail, Cerrillo called Zacharias and told her to pick him up when he bonded out. After she did so, they drove to a local hotel, retrieved the heroin, and then hailed a taxi to go to a Chinese restaurant, where the FBI believed Rodriguez's people were waiting. Law enforcement conducted a traffic stop of the taxi and found Cerrillo and Zacharias in possession of close to one kilogram of heroin. Post-arrest, Zacharias stated that this was the second trip she and Cerrillo had made, in conjunction with Rodriguez, in recent months.

Special Agent Joseph Boland initially testified that, during the intercepted phone call between Rodriguez and Cerrillo, Rodriguez told Cerrillo to go to a hotel in Tampa so that they could later arrange a pickup. Boland conceded on cross-examination, however, that the conversation about meeting at the hotel was between

4

Cerrillo and Zacharias, not Rodriguez, and that Rodriguez immediately hung up on Cerrillo after Cerrillo stated that he had "two and a half for you."

After considering this evidence and argument from the parties, the district court adopted the undisputed aspects of the PSR and then resolved the disputed issues, including the importation enhancement, for the reasons "stated in the addendum" to the PSR. The addendum, however, addressed only drug quantity and the aggravating-role enhancement; it did not address the importation enhancement. The court then varied downward from the guideline range of 210 to 262 months and sentenced Rodriguez to 180 months of imprisonment. This appeal followed.

## II.

We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Smith*, 231 F.3d 800, 806 (11th Cir. 2000). The government bears the burden to prove the application of a disputed sentencing enhancement by a preponderance of the evidence. *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

Section 2D1.1(b)(15)(C) of the 2016 Sentencing Guidelines provides that, if a defendant receives an adjustment under § 3B1.1 for an aggravating role and was "directly involved in the importation of a controlled substance," his offense level is increased by two levels. U.S.S.G. § 2D1.1(b)(15)(C) (2016). The commentary offers the following guidance for applying this enhancement:

> Subsection (b)(15)(C) applies if the defendant is accountable for the importation of a controlled substance under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)), *i.e.*, the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation of a controlled substance.

*Id.* § 2D1.1, cmt. n.20(B). In other words, the enhancement must be based on the defendant's own conduct, not on the reasonably foreseeable acts of others in furtherance of jointly undertaken activity. *See id.*; U.S.S.G. § 1B1.3(a)(1)(B).

Rodriguez argues that the evidence here fails to show a nexus between his conduct and the importation of the heroin. At best, he says, the evidence shows that he received (and then sold) heroin that had been imported into the United States at some point by a drug cartel through a person with connections to that cartel.

We have not previously addressed what it means for a defendant to be "directly involved" in importation within the meaning of § 2D1.1(b)(15)(C) (2016). We have, however, considered a separate importation enhancement, which directs a two-level increase if "the offense involved the importation of amphetamine or methamphetamine." *See United States v. Perez-Oliveros*, 479 F.3d 779, 783–84 (2007). In *Perez-Oliveros*, we held that this enhancement—now under U.S.S.G. § 2D1.1(b)(5)—did not "apply to only those defendants who themselves transport methamphetamine across the border." *Id.* at 784. We reasoned that, if the Sentencing Commission had wanted § 2D1.1(b)(5) to apply to only the importation of methamphetamine, it would have used the more restrictive language it used in a

6

different subsection, "which applies a separate enhancement only '[i]f the defendant unlawfully imported or exported a controlled substance' under certain circumstances." *Id.* (quoting what is now U.S.S.G. § 2D1.1(b)(3)). But since the Commission chose the "more inclusive language 'involved the importation,'" we gave the enhancement a "broader reading." *Id.* However, we "decline[d] to define the exact contours of what it means for an offense to 'involve[] the importation of . . . methamphetamine,'" finding that the requisite level of involvement was met. *Id.* (defendant transported drugs as part of an ongoing importation, even though he did not personally cross the border).

In light of *Perez-Oliveros*, we would have little difficulty concluding that Rodriguez's offense "involved the importation" of heroin. But § 2D1.1(b)(15)(C) requires something more: that "the defendant was *directly involved* in the importation." U.S.S.G. § 2D1.1(b)(15)(C) (2016) (emphasis added). This language indicates that the Sentencing Commission intended § 2D1.1(b)(15)(C) to apply more narrowly than § 2D1.1(b)(5). *Cf. United States v. Biao Huang*, 687 F.3d 1197, 1205–06 (9th Cir. 2012) ("If the Sentencing Commission had intended to limit § 2D1.1(b)(5) to defendants who personally imported methamphetamine, it would have used the more restrictive language it included in these other enhancements." (referring to § 2D1.1(b)(3) and (b)(15)(C)); *United States v. Rodriguez*, 666 F.3d 944, 946 (5th Cir. 2012) ("The scope of actions that 'involve' the importation of

drugs is larger than the scope of those that constitute the actual importation."). It is not enough for the offense simply to have involved importation, even where the importation is the result of reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity. *See* U.S.S.G. § 2D1.1, cmt. n.20(B). Instead, the defendant must have "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation." *Id.*

Here, we cannot tell whether the district court made a factual finding beyond that the offense involved heroin imported from Mexico. The court stated that it resolved the disputed sentencing issues for the reasons "stated in the addendum" to the PSR, but the addendum did not address the importation enhancement. Assuming the court also meant to adopt the PSR's explanation of the basis for the enhancement, that gets us no further than that "the case involved heroin imported from Mexico." This statement, however, doesn't explain Rodriguez's personal involvement in the importation, nor does Rodriguez's manager or supervisor role in the distribution of heroin imported from Mexico necessarily mean that he was "directly involved" in its importation.

Because we are unable to tell the basis for the district court's application of the importation enhancement and whether that basis adequately supports the enhancement, we remand for further proceedings.[3] *See United States v. Reid*, 139

---

[3] The government in its brief on appeal offers more precise grounds for applying the

F.3d 1367, 1368 (11th Cir. 1998) ("We cannot engage in meaningful appellate review of a sentence unless the district court sets out the facts underpinning the guidelines it applied in fashioning the defendant's sentence or the record plainly establishes such facts."). On remand, the court should clarify its grounds, based on the current record, for determining that Rodriguez was "directly involved" in the importation of heroin under § 2D1.1(b)(15)(C).

Alternatively, if the district court would have imposed the same sentence regardless of its resolution of the guideline issue, given that it imposed a sentence outside the guideline range, it may state as much and its reasons for doing so. *See United States v. Focia*, 869 F.3d 1269, 1287 (11th Cir. 2017) ("Where the district court states that it would have imposed the same sentence regardless of any guideline-calculation error, any error is harmless if the sentence would be reasonable even if the district court's guideline calculation was erroneous."); *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006) (same).

**VACATED AND REMANDED.**

---

enhancement than it presented below, but we will not presume that the district court relied on these grounds when the court expressly cited to the PSR and the addendum as its bases for the ruling.